(Decided 5th June, 1873.)

---

JOSHUA NICHOLSON *vs.* THE STATE OF MARYLAND.

*Evidence—Admissibility of a Confession—Onus Probandi upon the Prosecutor to show that a Confession was not obtained Improperly—Province of the Court and Jury upon a Question of Admissibility of Evidence.*

On a trial for murder, a witness Mr. Crone, was introduced on the part of the State for the purpose of detailing a confession alleged to have been made to him by the prisoner.  Before Crone was allowed to testify, he was at the

instance of the prisoner's counsel examined as to the circumstances under which the confession was made, for the purpose of ascertaining whether any promise or threat or inducement to confess, had been made to the prisoner which would render the confession inadmissible, and proved that it had been made voluntarily and without being induced by any promise or threat whatsoever. At the instance of the prisoner's counsel leave was given by the Court for further testimony on the subject to be offered on both sides; and Thomas Nicholson on the part of the prisoner, testified that he was present at the interview between the prisoner and the witness Crone at which the confession was made, and that Crone sat down by the prisoner and said to him: "For Christ's sake if you know any thing about this case, let it out before Hollohan squeals: for if you do not, he will squeal before you, and you will get the worse of it," and that this was said by Crone before any statement or confession was made by the prisoner. John English, who was present at the same interview, testified that "neither before the confession was made by the prisoner, nor at any other time during the interview, did Crone say to the prisoner the words testified to by Thomas Nicholson, or any thing whatever to the like import." Crone was then re-called and contradicted Nicholson, and swore that "he did not before the statement was made by the prisoner, or at any other time make use of, or say to him, the words or expressions testified to by the witness Thomas Nicholson." Both Crone and English testified substantially to the same facts. They both stated that just after they entered the room of the station house, where the prisoner was confined, Thomas Nicholson being with them, the prisoner spoke first to Crone and said *"I want to tell you all about this case."* Crone then said to him *"Josh! let it be the truth; and let it be of your own free will and consent;"* or according to the recollection of English, Crone's answer was, *"then I want you to tell me the truth about this thing, and make a clean breast of it;"* and the prisoner then went on to make his statement. HELD:

That the statement and confession of the prisoner was admissible and competent evidence to be submitted to the jury.

If the confession of the prisoner had been induced by any threat of harm, or promise of worldly advantage held out to him by Crone, or by his authority, or in his presence and with his sanction, it would have been inadmissible in evidence.

Where the confession of a prisoner is offered in evidence, the *onus* is upon the prosecutor to show affirmatively that it was not made in consequence of an improper inducement, or was not obtained from the prisoner by improper means.

When the confession of a prisoner on trial is offered against him, its admissibility in evidence must be determined by the Court and not by the jury.

Nicholson *vs.* State.

In civil cases where the preliminary question upon which the admissibility of evidence depends, *is one of fact only*, and the evidence upon which the preliminary question depends is doubtful, such question may be left to the determination of the jury under hypothetical instructions from the Court.

APPEAL from the Circut Court for Anne Arundel county.

The appellant and Thomas Hollihan were presented and jointly indicted by the grand jury of the city of Baltimore, at the January Term, 1873, of the Criminal Court of Baltimore, for the murder of Mrs. Mary Ann Lampley, on the second day of January, 1873. The indictment was in the usual form of an indictment for murder. The prisoners were arraigned in the said Criminal Court on the 31st of March, 1873, and severally pleaded not guilty; and on the same day, upon their suggestion and affidavit, that they could not have a fair and impartial trial in said Criminal Court, the Court ordered and directed the record and proceedings in said cause to be transmitted to the Circuit Court for Anne Arundel county for trial; which was accordingly done. The case was tried before a jury duly empannelled in the said Circuit Court for Anne Arundel county, on the 7th of May, 1873, at the April Term of said Court. The prisoners were jointly tried, and on the 9th of May, 1873, the jury rendered a verdict of "guilty of murder in the first degree," against each of the prisoners.

*Exception.*—At the trial of this cause, the State, after having introduced other evidence tending to establish the guilt of the accused, called to the stand *William Crone*, a competent witness, and proved by him that he was Chief of the Detective Department of the Police Force of Baltimore city, and that his assistants had arrested both the prisoners on the 30th of January, 1873; that Nicholson was brought to the Middle District Station-House, and that Hollihan was taken to the station-house of the Eastern District. Witness then stated that he had a

conversation with Nicholson on the night of the 30th of January, the day of his arrest, at the Middle District Station-House; that Thomas Nicholson, a brother of the prisoner, came down from his room, and told witness the prisoner wanted to see him, and witness then went to his room, where there were present, besides witness and the prisoner, Thomas Nicholson, the prisoner's brother, and John English; that just after witness entered the room, the prisoner arose from his seat, and said to witness, "I want to tell you all about this case."

At this stage of his examination, and before the witness was allowed to detail the statement or confession then made to him by the prisoner, his counsel interposed, and proposed to examine the witness as to whether, before the statement was made by the prisoner, any promise, or threat or inducement to confess was made to him, which would render his confession inadmissible in evidence, and the Court permitted this to be done.

The witness being then examined on this point before the Court and jury, testified, that he never had had any previous interview or conversation with the prisoner, and had never made to him any promise, or threat or induce- ment to confess whatever; that he had not seen the prisoner to talk with him before this time; that he did not tell his brother, Thomas Nicholson, to deliver any message from witness to the prisoner; that he went from his office to the station-house with Thomas Nicholson and John English, the latter walking with witness, and the former most of the way a little in advance; that when thus walking along, Thomas Nicholson said he was sorry about the case, and he, witness, might have then said I am sorry your brother has got into trouble; that he gave Thomas Nicholson permission to see his brother, the prisoner, and I may have said, if Joshua, the prisoner, wants to see me, I will come to see him; that he never sent for Thomas Nicholson, nor did he send English for

him, nor does he know that he was sent for; and witness swears emphatically, that up to the period of this interview and before the confession then made, he had made no promises or threats to the prisoner, nor had he held out any inducements to him to make a confession. The Court was thereupon of opinion, that the statement or confession proposed to be proven was admissible, but the counsel for the prisoner, asked leave to introduce other testimony as to the fact, whether any such threats, promises or inducements were made to the prisoner, before the witness should be permitted to detail the confession; and the Court thereupon, and against the objection of the State's Attorney, decided that it would permit further testimony on this subject, both on the part of the accused and on the part of the State, before the latter should be allowed to give in evidence the proposed confession.

The counsel for the prisoner then called to the stand *Thomas Nicholson*, a competent witness, who testified, that on the 30th of January, John English sent for him, and they went to Crone's office; that English called Crone out, and they, witness, English and Crone walked to the station-house side by side, and while so walking along, Crone said to him, witness, this is a hell of a scrape and he was sorry for it, and said he had had Joshua, the prisoner, in his private office, and he had tried to get something out of him, but could not; that Crone then told me I ought to try and get Joshua to say something, that I was the only one that could get anything out of him: that he then told me that promises had been made to him by the State's Attorney of Baltimore city, if they could get him, the prisoner, to squeal; that when they arrived at the station-house, witness was allowed to see his brother, and he afterwards called Crone up to his room; that Crone came in, drew up a chair, and sat down by the prisoner, and said to him, "for Christ's

sake, if you know anything about this case, let it out before Hollihan squeals, for if you do not, Hollihan will squeal before you, and you will get the worse of it," and this was said to him by Crone, before any statement or confession was made by the prisoner.

The State then called to the stand *John English*, a competent witness, who testified that he was present at the interview spoken of by the other witnesses, at the station-house ; that he accompanied Crone and Thomas Nicholson from Crone's office to the station-house, the three of us walking together, Crone in the middle ; that while they were thus on their way to the station-house, no such conversations occurred between Crone and Thomas Nicholson, as the latter had testified to, nor did Crone make any such statements to said Thomas Nicholson while thus on their way, as the said Thomas had testified to ; that when they arrived at the station-house, Thomas Nicholson went up in to the prisoner's room, and Crone and witness remained down stairs ; that said Thomas Nicholson afterwards came down, and said to Crone, that Joshua wanted to see him, and all three of us then went up stairs, and into the prisoner's room, and prisoner thereupon spoke first to Crone, and said to him, "I want to tell you everything about this case," and Crone then said to him, "then I want you to tell me the truth about this thing and make a clean breast of it," and the prisoner then went on to make his statement ; that neither before this statement was made, nor at any other time during the interview, did Crone say to the prisoner the words testified to by Thomas Nicholson, or anything whatever to the like import.

The State then recalled *Crone,* who testified, that while on their way to the station-house, he did not use the words or expressions attributed to him by Thomas Nicholson in his testimony, or anything like them ; that after he went into the prisoner's room at the station-house,

and after the prisoner had said to him, "I want to tell you all about this case," witness said to him, "Josh, let it be the truth, and let it be of your free will and consent;" and does not think he said, "Make a clean breast of it;" and he positively swears he did not, before the statement was made by the prisoner, or at any other time, make use of, or say to him, the words or expressions testified to by the witness, Thomas Nicholson; that after the prisoner had begun his statement, Thomas Nicholson, his brother, said to him, "That's right, Josh, tell the truth."

The aforegoing being all the testimony offered on this question by either side, the Court thereupon ruled and decided, that nothing in said testimony of the witnesses Crone and English, or either of them, rendered the proposed confession inadmissible in evidence, but instructed the jury, that if they believed the words and expressions testified to by Thomas Nicholson, viz: "For Christ's sake, if you know anything about this case, let it out before Hollihan squeals, for if you do not, Hollihan will squeal first, and you will get the worse of it," were used and said to the prisoner before the confession, about to be given in evidence, was made, then the same was inadmissible, and they must not regard it as evidence before them affecting the prisoner; but on the other hand, if they believe that such words or expressions were not spoken or made to him, as testified to by Thomas Nicholson, and that nothing was said to him except what has been testified to by the witnesses, Crone and English, then said confession is admissible in evidence, and they must regard and consider it as evidence before them; and having thus clearly and distinctly instructed the jury, the Court permitted the witness, Crone, to detail to the jury the statement and confession of the prisoner, made to him at the said station-house on the said night of the 30th of January, 1873, and the confession then made was given in evidence to the jury by said witness under and subject to the aforesaid instructions.

The counsel for the prisoner, Nicholson, thereupon, and before the witness detailed to the jury said confession, excepted to so much of the aforegoing ruling of the Court as decided that nothing in the testimony of Crone and English, or either of them, rendered the proposed confession inadmissible in evidence, and the verdict being against the prisoner, he prosecuted this appeal, under the Act of 1872, ch. 316.

The cause was argued before Bartol, C. J., Stewart, Bowie, Brent and Alvey, J.

*W. Frank Tucker* and *Will. H. Tuck*, for the appellant.

The *onus* is on the State to show *with certainty* that the confession was voluntary. 2 *East. C. L*, *page* 657, *sec.* 94; 1 *Taylor's Ev.*, *sec.* 796; *Regina vs. Baldry*, 2 *Den. Crown Cases*, 448.

The law does not measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration, *if any degree of influence* was exerted. *Russ. on Crimes*, 826.

If made under any threat, promise or *encouragement* of hope, they will be rejected. *State vs. Phelps*, 11 *Vermont*, 116.

If what is said to a prisoner is calculated to raise *expectations* of favor from making a statement, it will not be received; and whether, in a given case, such was likely to be the result, must depend on the circumstances of that case. 1 *Taylor on Ev.*, 800.

It appears, that after the accused had said, "I want to tell you everything," &c., and before he commenced his confession, Crone said, (according to English's testimony,) "Then I *want* you to tell me the truth about this thing, and make a clean breast of it," or (according to his own (Crone's) testimony,) "Josh, let it be the truth, and let it be of your free will and consent;" and

after the prisoner had commenced his statement, his brother said, "That's right, Josh, tell the truth."

Whatever the accused may have intended to say when these men entered the room, and before anything fell from Crone, it is impossible for any one to say with certainty what effect the language of Crone may have had on his mind, whether that language was as represented by one or the other of these men, Crone or English, although no case may be produced in which these precise words were used; yet confessions have been excluded under circumstances no stronger than those under consideration, where the words imported neither threats nor promises, but mere persuasions or cautions, "You are under suspicions of this, and you had better tell all you know." *Rex vs. Kingston,* 4 *C. & P.,* 87; *Regina vs. Cheverton,* 2 *Fost. & Fin.,* 833; *Rex vs. Thomas,* 6 *C. & P.,* 353; *Regina vs. Garner,* 2 *C. & Kir.,* 920; 3 *Lee's Cases,* 329; *Rex vs. Partridge,* 7 *Carr. & P.,* 551; *State vs. Guild,* 5 *Halsted,* 163; *Rex vs. Mills,* 6 *C. & P.,* 146; *R. vs. Fleming,* 1 *Armstrong, M. & O.,* 330; *Regina vs. Drew,* 8 *C. & P.,* 140; *Rex vs. Shepherd,* 7 *C. & P.,* 579.

When an officer in charge of a person accused of crime says to him, "I want you to tell me the truth about this thing, and make a clean breast of it," the person addressed, will naturally suppose that the officer has a motive for making the request, and that something may be gained by gratifying him; and when we consider the known anxiety and extreme diligence of police officers and detectives to "work up their cases," as well on account of their reputation as the reward in prospect, if successful, it is next to impossible to resist the conclusion that language of this kind will induce confessions which would not otherwise be made.

But the case does not depend merely on what Crone and English said. The question is, whether it was

shown *with certainty, beyond doubt,* that no inducement had been offered, and to determine that, all the evidence submitted on this preliminary point ought to have been passed upon *by the Court,* without leaving to the jury to settle the question as to the admissibility of the confession, according to their estimate of the testimony.

It is the peculiar province of the Court to decide such questions before the proposed evidence can be put in, and there would seem to be no more difficulty in criminal than in civil cases.   The *Judge* must be satisfied, and in case *of any doubt,* the confession will be rejected.   1 *Taylor's Ev.,* sec 796, *ante sec.* 22 ; *Regina vs. Warringham,* 2 *Den. C. C.,* 448 ; 1 *Phillips' Ev.,* 543.

There is the strongest reason against submitting the question to the jury.   The very design of requiring the State to show that the confession was voluntary, is to keep it from the jury, unless proved to be free from inducement of *any kind.*   But this purpose is frustrated if the jury is to pass upon the preliminary proof; which is nothing less than to decide whether the confession is admissible or not.   1 *Taylor's Ev.,* sec. 22.

Besides, the question of admissibility of a confession is one of law and not of fact. . From every decision of this kind the party is entitled to an appeal, but if the Court, without deciding the question, submits it to the jury, the right of appeal is denied.

It cannot be said that the accused is benefitted by leaving the question to the jury, for, besides depriving him of the right of appeal, the necessary effect is to have detailed to the jury, the very matters which it is his interest to have excluded from their hearing, and constituted as juries are, it is difficult for them, in deciding the question of admissibility, not to be influenced by the confession itself.

This view of the case is embraced by the ruling of the Court, as to the testimony of Crone and English, as

fully as if there had been a specific exception to the instruction given as to the evidence of Nicholson, because the opinion was confined to the evidence of the two former, not embracing that of the latter; whereas the prisoner was entitled to the judgment of the Court upon *all* the evidence in this preliminary investigation.

There are cases in which the Court may submit a doubtful matter or point as to evidence to the jury, but this does not apply to cases of confession, which are *never* admitted, unless as a condition precedent, the State shows *affirmatively* there was no inducement. *Trasher vs. Everhart,* 3 *G. & J.,* 34; *Funk vs. Kincaid,* 5 *Md.,* 404.

*James Revell, State's Attorney,* for the appellee.

To exclude a confession, there must be a *threat of harm or a promise of worldly advantage* employed by a *person in authority. Wharton's Crim. Law,* sec. 685; *Regina vs. Baldry,* 2 *Denison's Crown Cases,* 430.

Was there any *threat* or *promise* in this case? Crone and English both swear, that the *first words* spoken were *uttered by the prisoner,* who said to Crone, *"I want to tell you all about this case."* Crone swears his reply was, *"Josh! let it be the truth, and let it be of your free will and consent;"* and that after the prisoner had commenced his statement, Tom Nicholson said, *"That's right, Josh, tell the truth."* English swears that Crone's reply was, *"Then I want you to tell me the truth about this thing and make a clean breast of it."*

There is certainly nothing in these expressions which, by any contortion of language, could be construed with a threat of harm or promise of advantage. Notwitstanding Courts have gone, *unreasonably* far in excluding confessions, no authority can be found to the extent now claimed by the appellant. Moreover, the ruling and tendency of the Courts of late years have been to relax the old rules of exclusion, for, as has well been said, *"it*

has too often happened that justice and common sense have been sacrificed on the shrine of mercy." 1 *Taylor on Evidence,* sec. 807; *Regina vs. Baldry,* 2 *Den. C. C.,* 430.

But putting the case in the strongest manner for the accused, and assuming, not granting, that the language was objectionable, the enquiry would yet arise, was it calculated to make the confession untrue. *Wharton's Crim. Law,* sec. 687; 2 *Russ. on Crimes,* 845; *Rex vs. Thomas,* 7 *C. & P.,* 345; *U. S. vs. Nott,* 1 *McClean,* 499; *State vs. Kirby,* 1 *Strobhart,* 155; *Roscoe's Cr. Ev.,* 30 *to* 35, *(Edition of* 1836;) 1 *Taylor's Ev.,* sec. 800; *Rex vs. Court,* 7 *Carr. & P.,* 486.

To say the most, the language was but an exhortation to speak the truth, and notwithstanding, in some few instances, exhortations not to tell lies, but to speak the truth, have been deemed likely to induce a false acknowledgment of guilt and admissions after such exhortations have been rejected, yet this paradoxical opinion is now happily exploded. 1 *Taylor's Ev.,* sec. 807; *Rex vs. Harris,* 1 *Moo. C. C.,* 338; *Rex vs. Court,* 7 *C. & P.,* 486; *Regina vs. Baldry,* 2 *Den. Crown Cases,* 430; *Rex vs. Wild,* 1 *Moo. C. C.,* 452; *Regina vs. Holmes,* 1 *C. & Kir.,* 248; *The Queen vs. Jarvis,* 1 *Crown Cases Res. (L. Rep.,)* 96; *Wh. Cr. L.,* sec. 685; 37 *L. J., M. C.,* 1; *Com. vs. Tuckerman,* 10 *Gray,* 173; *Hawkins vs. State,* 7 *Missouri,* 190; *Fouts vs. State,* 8 *Ohio State Rep.,* 107.

BARTOL, C. J., delivered the opinion of the Court.

It appears by the record that the appellant was indicted for murder, jointly with Thomas Hollihan, and a verdict of "guilty of murder in the first degree" was rendered against each of the prisoners.

In the course of the trial, an exception was taken by the counsel for the appellant, to the ruling of the Circuit Court, which is now before us for review on this appeal. The questions presented for our consideration, arise upon

the admission in evidence of confessions made by the appellant, after he was arrested, to *William Crone*, a detective. The bill of exception shows, that before the witness *Crone* was allowed to detail the confession made to him by the prisoner, he was at the instance of the prisoner's counsel, examined as to the circumstances under which the confession was made; for the purpose of ascertaining whether any promise or. threat or inducement to confess, had been made to the prisoner, which would render the confession inadmissible ; and proved that the confession had been made voluntarily, and without being induced by any promise or threat whatsoever.

Thereupon, at the instance of the prisoner's counsel, leave was given by the Court for further testimony on this subject to be offered, both on the part of the accused and of the State; and Thomas Nicholson was called on the part of the prisoner, and testified, that he was present at the interview between the prisoner and Crone, at which the confession was made, and stated, that Crone sat down by the prisoner and said to him, "for Christ's sake, if you know anything about ·this case, let it out before Hollihan squeals, for if you do not, Hollihan will squeal before you, and you will get the worse of it," and that this was said by Crone before any statement or confession was made by the prisoner.

John English, who was present at the same interview, testified that " neither before the confession was made by the prisoner, nor at any other time during the interview, did Crone say to the prisoner the words testified to by Thomas Nicholson, or anything whatever to the like import."

Crone was then recalled and contradicted the witness Thomas Nicholson, and swore that "he did not before the statement was made by the prisoner, or at any other time, make use of or say to him, the words or expressions testified to by the witness Thomas Nicholson."

Both Crone and English testified substantially to the same facts. They both stated that just after they entered the room at the station house, where the prisoner was confined, Thomas Nicholson, the witness being with them, the prisoner spoke first to *Crone* and said, "I want *to tell you all about this case.*" Crone then said to him, "*Josh let it be the truth, and let it be of your free will and consent,*"—or according to English's recollection, Crone's answer was, "*then I want* you to tell me the truth about this thing, and make a clean breast of it," and the prisoner then went on to make his statement. Upon a most careful consideration of the whole testimony on this point, after an examination of the authorities cited in the argument; we are all of opinion that the statement and confession of the prisoner was admissible, and competent evidence to be submitted to the jury.

Without undertaking to lay down any general rule on this subject, or attempting to define the nature and character of the inducements held out to a prisoner, which would render his confession inadmissible; for this must necessarily depend very much upon the particular circumstances of each case; it is very clear upon all the authorities, that if the confession of the appellant had been induced by any threat of harm, or promise of worldly advantage held out to him by Crone, or by his authority, or in his presence and with his sanction, it ought to be excluded.

The law is also well settled that the *onus* is upon the prosecutor, to show affirmatively, that the confession proposed to be offered was not made in consequence of an improper inducement. 1 *Taylor*, sec. 796. In the language of Baron PARKE in *Queen vs. Warringham, the Court must be satisfied* that the confession sought to be used in evidence against the prisoner, "was not obtained from him by improper means." 2 *Den. C. C.*, 448, *note.*

According to the testimony of Crone and English, there was neither promise nor threat employed in this case; the statement of the prisoner was made by him voluntarily. Thomas Nicholson testifies to the contrary; but it is impossible to give credence to his statement, he is not only positively contradicted by both of the other witnesses; but his whole testimony is improbable in the extreme. Not only does he put in the mouth of Crone, words which Crone himself positively states were not used by him, and which English, a disinterested witness who was present and heard all that occurred, positively contradicts; but his other statements as to what he alleges Crone had previously said to him, while on their way to the station house, are not supported by any other testimony, and are positively disproved by both Crone and English. And when it is remembered that this witness is a brother of the prisoner, naturally moved by the strongest bias in his favor, and testifying under the influence of that bias; we cannot escape the conviction that the true account of what occurred at the interview with the prisoner, and of the circumstances under which he made the confession, is to be found in the testimony of Crone and English. There was no error therefore in allowing the confession, to be given in evidence to the jury.

We have thought it our duty in a case of such serious and vital importance, to express our judgment on this question, without stopping to inquire whether it is technically presented by the exception as it is set out in the record.

Without regard to the form of the exception, it is evident that the material and important question in the case, is whether the confession of the prisoner, made under the circumstances shown by the proof, was properly allowed to go to the jury. The determination of this question in the affirmative, is conclusive of the case.

It appears that the Circuit Court, after the preliminary testimony was heard, showing the circumstances under which the confession was made, permitted it to go to the jury, instructing them substantially, that it was admissible and competent evidence, and proper for them to consider, if they believed the facts testified to by Crone and English, or either of them. But if they believed the testimony of Thomas Nicholson to be true, "then it was admissible, and they must not regard it as evidence affecting the prisoner."

The point has been made in this Court, and argued by the appellant's counsel, that the preliminary question of the admissibility of the confession was for the Court to determine, and that it ought not to have been left to the jury to decide upon the credibility of the witnesses, bearing on that question.

This point is not material or important in this case; the Court below virtually passed upon the question, by allowing the confession to go to the jury; and as we are all of opinion that the confession was admissible and proper evidence, the ruling of the Circuit Court on that question must be affirmed. The only effect of the instruction given to the jury, was to afford the prisoner's counsel an opportunity of arguing before them, that the testimony of Thomas Nicholson was entitled to their belief, and consequently that the confession of the prisoner ought to be discarded from their consideration. The appellant was not therefore injured by the course pursued by the Court in this respect, and cannot be entitled to a reversal for that cause.

The question is however, an interesting and important one in practice; and although its decision cannot for the reasons stated, affect the decision of the present case, we consider it proper to express our judgment upon it.

The general proposition stated by the appellant's counsel, is undoubtedly correct. The question of the admissibility of testimony, is always for the Court; and

the rule, is where the confession of a prisoner on trial is offered against him, the Court, and not the jury, are to determine whether it is admissible. The rule is thus stated in *Taylor on Evidence, sec.* 22, "If," says the author, "the question be whether a confession should be excluded on account of some previous threat or promise, the judge must decide *first,* whether the threat or promise was really made; and *secondly*, whether if made, it was sufficient in law to warrant the exclusion of the evidence." We refer also to *section* 796. This rule is conformable to reason, and is supported by the authorities. It was departed from in *King vs. Woodcock*, decided in 1789, *Leach's C. C.*, 500, where an analogous question arose. EYRE, C. B., being in doubt upon the preliminary testimony, whether a statement of a party offered in evidence as a dying declaration, had been made, when the declarant was under the apprehension of death, left that question to the jury, instructing them, that if they so believed, the declarations were admissible; but if they believed the contrary, they were not admissible. This decision was expressly overruled in *Thomas Johns' case*, decided in 1790, in which all the judges were of opinion, "that it ought not to be left to the jury to decide whether the deceased thought she was dying or not; for that must be decided by the judge before he receives the evidence." This last decision was followed in the case of *Henry Welborn*, decided 1792, 1 *East. C. L.*, 359, 360. These cases are reported in *Leach's C. C.*, 503, 504, (*notes*.) We refer also to *King vs. Hucks*, 1 *Starkie's R* , 521, (2 *Eng. C. L. R.*, 495) *and note*, and also to the case cited by PARKE, B., in his opinion in *Bartlett vs. Smith*, 11 *Mees. & W.*, 485. As very well said in Starkie's note to *King vs. Hucks*, (2 *Eng. C. L.*, 495,) "it is clearly inconsistent with principle, to leave such evidence to the jury, to be acted upon, or rejected, according to their decision upon that which is clearly matter of law:" and we may add that very great injustice might in some cases, be done to

the prisoner, by allowing a confession made by him, to be given in evidence, before the Court is satisfied that it was voluntarily made; for as suggested in the appellant's brief, it would be difficult for the jury in deciding the question of admissibility, not to be influenced by the confession itself, which they ought not to hear, unless its admissibility is first clearly established to the satisfaction of the Court. Of course, the credibility of the witness who testifies to the confession, is a question for the jury to decide, in the same manner as they pass upon the credibility of other witnesses in the cause.

In civil cases, the rule of practice is different, as evidenced by the cases of *Trasher vs. Everhart*, 3 *G. & J.*, 234; *Dement vs. Stonestreet*, 1 *Md.*, 123; *Funk vs. Kincaid*, 5 *Md.*, 404.

In those cases it was held, that where the preliminary question upon which the admissibility of evidence depends *is one of fact only*, it may be left to the jury to be decided by them, under hypothetical instructions from the Court. That course may properly be pursued, where the evidence upon which the preliminary question depends, is doubtful, in such case, the Court may decline to decide it, and submit it to the jury. That rule cannot apply to a criminal case, for in passing upon the preliminary question of the admissibility of a confession made by a prisoner, if the Court considers it doubtful whether it ought to be admitted, it should be rejected. The law is so stated by *Taylor, vol.* 1, *sec.* 796, on the authority of *Queen vs. Warringham*, 2 *Den. C. C.*, 447.

In this case however, as we have before said, the confession of the appellant offered in evidence, was clearly admissible according to the proof; and there is no ground therefore, upon which the ruling of the Circuit Court ought to be reversed.

*Ruling affirmed, and*
*cause remanded.*

(Decided 6th June, 1873.)