JOHN BENJAMIN BISCOE *vs.* THE STATE OF MARY-
LAND.

*Evidence—Confession of Guilt—When and how Admitted—
Practice.*

A confession is not admissible in evidence against the prisoner unless
it is freely and voluntarily made.

Where the confession is made by the prisoner to the committing
magistrate after the latter has told him that it "would be better
for him to tell the truth and have no more trouble about it," it is
inadmissible, and ought to be excluded from the jury.

Before permitting the witness to testify in regard to the confession
the Court ought to ascertain, first whether any inducement at the
time or prior thereto, had been held out to the prisoner, and in the
next place whether he was influenced by such inducement in mak-
ing the confession.

The preliminary question as to the admissibility of a confession is
one which ought in all cases to be decided by the Court, before it
is permitted to go to the jury.

APPEAL from the Circuit Court for Charles County.

The case is sufficiently stated in the opinion of the
Court.

The cause was argued before ALVEY, C. J., MILLER,
ROBINSON, IRVING, and BRYAN, J.

*Daniel R. Magruder,* for the appellant.

*Charles B. Roberts, Attorney-General,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

The confession made by the prisoner to Morgan, the
committing magistrate, was not a free and voluntary con-

fession; and it ought not therefore to have been permitted to go to the jury. The confession was made under the following circumstances: The prisoner was committed to jail for the murder of Captain Robert R. Dixon, and the magistrate seemed to think it was his duty to get from the prisoner an admission or confession of some kind as to his guilt. For this purpose he went to see the prisoner no less than *five times,* and at each of these interviews the prisoner denied he had anything to do with the killing of the deceased. Finally, at the fifth interview, Morgan said he had read a statement in a newspaper "that a Captain Evans had seen the deceased on his vessel on the trip on which he was killed, and that there was only one other man on board." Upon making this statement, the prisoner seemed to hesitate, and Morgan then said to him *"that it would be better for him to tell the truth, and have no more trouble about it,"* and thereupon the prisoner made the confession which was offered in evidence. Morgan further says that in all these interviews, he told the prisoner, he could make him no promises.

Now all agree that a confession is not admissible in evidence against the prisoner, unless it was freely and voluntarily made. There is no difficulty in regard to the rule itself, the trouble is in the application of the rule to the facts of each particular case, that is whether it was a free and voluntary confession, or whether it was procured by the influence of another under a hope of favor or advantage if made, or fear of harm or disadvantage of some kind if withheld. It is not, of course, an easy matter to measure in all cases the force of the influence used, or to decide as to its precise effect upon the mind of the prisoner; much, very much, we may add, depends upon the age, the experience, the intelligence and character of the prisoner. And it may be, that Courts leaning to the side of mercy, have, in some cases, excluded confessions, when it is difficult to see how the alleged inducement had any

influence on the mind of the prisoner. As was said by Baron PARKE, in *Baldry's Case*, 2 *Den. C. C.*, 430, "the rule has been extended quite too far, and justice and common sense have frequently been sacrificed at the shrine of mercy." We have no disposition to extend the rule beyond the sound and well established principles on which it is founded ; and tested by these principles, the confession in this case is, we think, clearly inadmissible. The prisoner was in the custody of the law, and although pressed, time and again, to make a confession, and pressed too by one in authority, he persisted in denying his guilt, and it was not until he was told that it would be better for him to tell the truth, and have no more trouble about it, that the confession was made. Here then was an inducement, and one, too, of the strongest kind, held ont to him. The witness, it is true, says he told the prisoner he could make no promises, but what does this amount to, when in the next breath we find him saying to the prisoner, that it would be better for him to tell the truth, and thereby have no more trouble about the matter? It was, in fact, saying to the prisoner, if you will tell me the truth, it will not only be the better for you, but you shall have no more trouble about the matter.

In *Reg. vs. Garnier*, 2 *Carr. & K.*, 920, the witness told the prisoner "*that it would be better for him to tell the truth.*" PATTESON, J., before whom the case was tried, after conferring with Lord DENMAN, C. J., held the confession to be admissible, and upon the conviction of the prisoner, the question was reserved for the consideration of all the Judges. After full argument of the case, POLLOCK, C. B., said: "When a prisoner has been told that he had better tell the truth, and these expressions are used by, or in the presence of a person in authority, I always reject the evidence."

MAULE, J., said "That the expression, you had better tell the truth, coming from a person in competent authority,

excludes what is said by the prisoner afterwards, has been decided in more than a hundred instances."

ERLE, J., was of the same opinion, and PATTESON, J., before whom the case had been tried, was of opinion that he had erred in admitting the confession, and as there was no other evidence, he said " he ought to have directed an acquittal."

In *Rex vs. Kingston*, 4 *Carr. & P.*, 387, the prisoner was indicted for administering arsenic to one Eliza Bates, with intent to murder.  The surgeon who was called in saw the prisoner, and said to him : " You are under suspicion of this, and you had better tell all you know." Mr. Justice PARKE, having conferred with Mr. Justice LITTLEDALE, held the confession made by the prisoner to be inadmissible.

So again, in *Rex vs. Partridge*, 7 *Carr. & P.*, 557, the prisoner being in the custody of a constable, the latter said to Mr. Morling, the prosecutor :  " You must not use any threat or promise to the prisoner," and immediately afterwards, Morling said to the prisoner, " I should be obliged to you, if you would tell us what you know about it; if you will not, *we, of course, can do nothing*.  I shall be glad if you will."  Mr. Justice PATTESON held this to be a promise.  " What could the prosecutor mean," say the Court, " by saying that if the prisoner would not tell they could do nothing, but that if the prisoner would tell they would do something for him ?"

The whole question was fully considered in the latter case of *Reg. vs. Baldry*, 2 *Den. Crim. Cases*, 430, by Lord CAMPBELL, C. J., POLLOCK, C. B., PARKE, B., and ERLE and WILLIAMS, Justices.

POLLOCK, C. B., said : " A simple caution to the accused to tell the truth, if he says anything, the statement may be given in evidence, but where the admonition to speak the truth has been coupled with any expression importing that it would be better for him to do so, it has

been held that the confession was not receivable, the objectionable words being that it would be better to speak the truth, because they import that it would be better for him to say something."

Now Morgan, the magistrate, having told the prisoner that it "would be better for him to tell the truth, and have no more trouble about it," the confession thereupon made by the prisoner is, according to all the decisions, inadmissible, and the Court ought to have excluded it from the jury.

The prisoner also offered to prove by other witnesses, that prior to the interview at which the confession was made, Morgan had held out inducements to the prisoner to confess, and also what was said by Morgan at the time. This offer the Court refused, saying at the time, that if it should appear in the subsequent progress of the trial, that inducements were in fact held out to the prisoner, and that the confession was made in consequence of such inducements, the Court would direct the confession to be stricken out. This was not, we think, the proper practice. Before permitting the witness to testify in regard to the confession, the Court ought to have ascertained first, whether any inducements at the time, or prior thereto, had been held out to the prisoner; and in the next place, whether he was influenced by such inducements in making the confession. The Court may, it is true, rule out a confession, even after it has been admitted in evidence, if satisfied in the subsequent progress of the case, that it was not a free and voluntary confession, and may instruct the jury that it is not to be considered by them in determining the question as to the guilt or innocence of the prisoner; but once in, it may have an influence more or less prejudicial against the prisoner. The preliminary question, therefore, as to its admissibility, is one which ought, in all cases, to be decided by the Court, before it is permitted to go before the jury. *Nicholson vs. State*, 38 *Md.*, 140.

For these reasons the rulings below must be reversed, and a new trial awarded.

*Rulings reversed, and*
*new trial awarded.*