721 A.2d 241

Michael J. PAPPACONSTANTINOU

v.

STATE of Maryland.

No. 29, Sept. Term, 1998.

Court of Appeals of Maryland.

Dec. 11, 1998.

Tucker V. Clagett (Andrews, Schick, Bongar & Starkey, P.A., on brief), Waldorf, for petitioner.

Regina Hollins Lewis, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

The question we must consider in this case is whether a confession elicited by a private individual is subject to Maryland's common law requirement of voluntariness. We shall hold that Maryland's common law voluntariness requirement does not apply to confessions elicited purely by private individuals.

## I.

Michael Pappaconstantinou (also known as Pappas) was employed with Auto Row Auto Parts (Auto Row) in Waldorf, Maryland for approximately three years until the company terminated him because it suspected that he had been stealing from the company. Following his termination, Pappas met with several Auto Row employees and signed the following statement:

> I, Michael John Pappas wrongfully took merchandise and money from Auto Row Auto Parts. I realize that I was correctly terminated from this establishment. Property was destroyed and incorrectly marked as return item [sic]. I realize that what I did was wrong and I unjustly cause [sic] a lot of difficulties to the members of Auto Row Auto Parts.

Auto Row initiated criminal charges, and Pappas was found guilty by a jury of twelve counts of theft under $300 and one count of theft over $300 in violation of Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.), Article 27, § 342.

Pappas filed a pre-trial motion to suppress his confession, claiming that it was extracted both by threats and by promises not to prosecute, and was therefore involuntary and inadmissible. The trial court declined to address the issue pre-trial, but at the trial, when Pappas renewed his motion to suppress his handwritten confession, the court held a hearing outside the presence of the jury. The trial court concluded that Pappas' statement, in the nature of an admission, was not "inherently unreliable." The trial court concluded that under the circumstances of the case, the statement was freely given, constitut-

ed competent evidence, and hence, was admissible in evidence. Pappas was convicted by the jury.

Pappas noted a timely appeal to the Court of Special Appeals, arguing that his confession was involuntary under Maryland's common law voluntariness requirement. The intermediate appellate court affirmed, holding that the common law voluntariness test, as enunciated by appellant, was "inapplicable in cases in which a private party has elicited a confession, which is later offered and received in evidence in a criminal prosecution of the confessor." *Pappaconstantinou v. State*, 118 Md.App. 668, 677, 703 A.2d 1295, 1299 (1998). The court reasoned that "privately-extracted confessions should be viewed like any other hearsay statement, such as a declaration against penal interest, and that the test, therefore, should be whether the statement is inherently trustworthy." *Id.* at 677, 703 A.2d at 1299. We agree with the Court of Special Appeals, and shall affirm.

## II.

█ Pappas argues before this Court that his confession was the result of an improper inducement because his former employers, representatives of Auto Row, promised not to prosecute him. Pappas concedes that there were no state actors involved in eliciting his confession, and as such, no federal constitutional principles are implicated. *See Colorado v. Connelly*, 479 U.S. 157, 166, 107 S.Ct. 515, 521, 93 L.Ed.2d 473 (1986) (holding that governmental or state action is a necessary requirement to exclude evidence under the Due Process Clause); *Reynolds v. State*, 327 Md. 494, 504, 610 A.2d 782, 786 (1992) (recognizing that "coercion by government agents is a necessary ingredient to a determination that a defendant's confession should be suppressed because the defendant's constitutional due process rights have been violated"). Instead, Pappas argues that his statement was involuntary under Maryland's common law voluntariness doctrine. He urges this Court to draw no distinction between those statements made to private individuals, on the one hand, and those statements made to government agents. He advocates

a rule that would exclude from evidence all involuntary statements on the grounds that Maryland's non-constitutional doctrine of voluntariness does not require state action to trigger the rule of exclusion. In the alternative, he suggests that if the application of Maryland's voluntariness doctrine is limited to those confessions elicited by "persons in authority," then "persons in authority" should include those persons having the actual power to carry out an inducement. In Pappas' view, this class would include employers, security guards and alleged victims.

The State's position is not complicated. The State argues that the Court of Special Appeals properly rejected Pappas' contention that Maryland's common law voluntariness test and hence, the Maryland common law rule of exclusion, applies when the defendant confesses to a private person rather than a government agent. The State maintains that the proper standard for determining the admissibility of statements made to private individuals is an evidentiary test, *i.e.*, whether the statement manifests sufficient indicia of reliability.

### III.

A confession is admissible in evidence against an accused if it is "(1) voluntary under Maryland non-constitutional law, (2) voluntary under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and Article 22 of the Maryland Declaration of Rights, and (3) elicited in conformance with the mandates of *Miranda*." *Ball v. State*, 347 Md. 156, 173–74, 699 A.2d 1170, 1178 (1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 866, 139 L.Ed.2d 763 (1998) (quoting *Hoey v. State*, 311 Md. 473, 480, 536 A.2d 622, 625 (1988)). Thus, the "voluntariness" of a confession can be determined by the application of state evidentiary rules as well as a constitutional due process analysis. *See Reynolds*, 327 Md. at 503, 610 A.2d at 786 (1992) (citing 1 MCCORMICK ON EVIDENCE §§ 146–47, at 564–74 (4th ed.1992)).

It is only the first requirement for admissibility that is in issue in this case—the admissibility of a statement under

Maryland non-constitutional law. Considerations of federal Due Process and *Miranda* warnings are not implicated when, as here, the defendant is not in police custody, and the confession is elicited through purely private action. *See Connelly*, 479 U.S. at 166, 107 S.Ct. at 521. The Supreme Court held in *Colorado v. Connelly* that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Id.* at 167, 107 S.Ct. at 522. The Court reasoned that "[t]he aim of the requirement of due process is not to exclude presumptively false evidence, but to prevent fundamental unfairness in the use of evidence, whether true or false." *Id.* at 167, 107 S.Ct. at 522 (quoting *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941)). Even "[t]he most outrageous behavior by a private party seeking to secure evidence against a defendant does not make that evidence inadmissible under the Due Process Clause." *Id.* at 166, 107 S.Ct. at 521. The Court then left to the states to determine, under evidentiary laws of the forum, the reliability of confessions not involving coercive police activity.[1] *Id.* at 167, 107 S.Ct. at 521.

---

1. After the Supreme Court's decision of *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986), courts in other jurisdictions have split on the issue of whether confessions elicited by private persons must be analyzed under a voluntariness standard. *See Commonwealth v. Cooper*, 899 S.W.2d 75, 75 (Ky.1995) (rejecting the argument that Kentucky's constitution or common law required suppression of a confession "coerced or improperly obtained by private parties"); *State v. Carroll*, 138 N.H. 687, 645 A.2d 82, 85 (N.H.1994) (noting that New Hampshire's state constitution, although providing greater protection than the federal constitution with respect to the voluntariness of confessions, does not apply in the absence of state action); *State v. McCullough*, 56 Wash.App. 655, 784 P.2d 566, 568 (Wash.Ct.App.1990) (rejecting defendant's argument that the state constitution applied where defendant had confessed to the victim); *Darghty v. State*, 530 So.2d 27, 31 (Miss.1988) (holding that "[c]onduct by third parties not connected with law enforcement officers in the investigation will not vitiate a confession which might be rendered incompetent and inadmissible if such conduct had been committed by a law enforcement officer"); *Compare Mirabal v. State*, 698 So.2d 360, 362 (Fla.Dist.Ct.App.1997) (holding defendant's confession to his private employer involuntary on state constitutional grounds); *State v. Bowe*, 77 Hawai'i

■ It has long been the law in this State that before confessions may be admitted in evidence, "that they be not induced by threats or by promise of advantage to be derived from making them; and the burden of showing affirmatively that they were not so induced to be made in any given case is upon the prosecutor." *Green v. State,* 96 Md. 384, 386, 54 A. 104, 104 (1903); *Nicholson v. State,* 38 Md. 140 (1873). The seminal case in Maryland on the common law voluntariness of confessions is *Nicholson v. State.* In that case, our predecessors considered the admissibility in evidence of a confession made to a police detective by the accused while in police custody. *Id.* at 143. The defendant contended that the police detective Crone used language to induce his confession that would not otherwise have been made. *Id.* Before the detective was permitted to testify to the details of the confession, the trial court examined the circumstances under which the confession was given to determine whether any promise, threat or inducement had been made to the prisoner that would render the confession involuntary, and hence inadmissible. *Id.* Concluding that the statement was competent evidence and admissible evidence to be presented to the jury, writing for the Court, Chief Judge Bartol stated:

> [I]t is very clear upon all the authorities, that if the confession of the appellant had been induced by any threat of harm, or promise of worldly advantage held out to him by Crone, *or by his authority, or in his presence and with his sanction,* it ought to be excluded.

*Id.* at 153 (emphasis added).

In the case of *Biscoe v. State,* 67 Md. 6, 8 A. 571 (1887), the Court reversed the murder conviction because the confession

---

51, 881 P.2d 538, 547 (Haw.1994)(holding on state constitutional grounds that "the coercive conduct of a private person may be sufficient to render a defendant's confession involuntary"); *People v. Seymour,* 188 Mich.App. 480, 470 N.W.2d 428, 430 (Mich.Ct.App.1991) (stating that "a confession coerced by a private citizen can also render the statement involuntary and inadmissible into evidence"); *see generally,* Annot., *Coercive Conduct by Private Person as Affecting Admissibility of Confession under State Statutes or Constitutional Provisions—Post–Connelly Cases,* 48 A.L.R.5th 555 (1997).

made by the prisoner to the committing magistrate was not voluntary. The magistrate, believing it was his duty to elicit a confession from the prisoner, visited the prisoner five times. *Id.* at 7, 8 A. at 571. On the last visit, the magistrate told the prisoner "that it would be better for him to tell the truth, and have no more trouble about it"; the prisoner confessed. *Id.* at 7, 8 A. at 571. The Court noted that at the time of the confession, the defendant was in the custody of the law and was pressed by one in authority. *Id.* at 8, 8 A. at 571–72. The Court reviewed several English cases, and quoted with approval from *Reg. v. Garnier,* 2 Carr. & K. 920:

> [T]he witness told the prisoner 'that it would be better for him to tell the truth.' ... After full argument of the case, Pollock, C.B., said: 'When a prisoner has been told that he had better tell the truth, and these expressions are used by, or *in the presence of a person in authority,* I always reject the evidence.'

*Id.* at 8, 8 A. at 572 (emphasis added).

In the case of *McCleary v. State,* 122 Md. 394, 89 A. 1100 (1914), the Court affirmed the judgment of conviction for murder, rejecting the defendant's claim that his confession was involuntary. In considering various circumstances that would render a statement inadmissible because of threats or promises, the Court quoted from *Commonwealth v. Myers,* 160 Mass. 530, 36 N.E. 481 (Mass.1894):

> [C]onfessions were not to be excluded because they were the admission of the person charged with the commission of a crime, but only where the circumstances were such under which they were made, that a reasonable presumption arises that they might have been induced by a promise or threat from *one in authority* and consequently were open to the objection that they might not be true.

*Id.* at 406, 89 A. at 1105 (emphasis added).

In *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979), the defendant claimed that his inculpatory statement to a police officer was involuntary because it was prompted by improper police inducement. We agreed, primarily because the officer

had promised the defendant help if he would make a statement. *Id.* at 153, 406 A.2d at 420. In our discussion of voluntariness, we noted:

> While any decision concerning the voluntariness of a statement necessarily must rest on the facts of the case involved, we nonetheless find that, with regard to promises and other similar forms of inducement designed to elicit a defendant's confession, this Court, in a series of cases that stretch back into the last century, has established certain boundaries within which *police conduct* must be contained.

*Id.* at 151–52, 406 A.2d at 419 (emphasis added). "The rule in *Hillard* announces that a statement is rendered involuntary if it is induced by any *official* promise which redounds to the benefit or desire of the defendant." *Reynolds v. State,* 327 Md. at 508–09, 610 A.2d at 789 (1992) (emphasis added) (quoting *Stokes v. State,* 289 Md. 155, 160, 423 A.2d 552, 554 (1980)).

A year after *Hillard,* we decided *Stokes v. State,* where we considered, *inter alia,* the question of whether a promise not to arrest a near relative of the defendant, or a threat to do so, constitutes a form of inducement which will render a resulting statement involuntary. 289 Md. at 161, 423 A.2d at 555. Judge Digges, writing for the Court, stated:

> A finding that an inducement is impermissible, as we determine the one in this case to be, may only result where the challenged statement was produced by *police* words or deeds which communicated a threat or promise to the defendant.

*Id.* at 161, 423 A.2d at 555 (emphasis added).

This Court also considered the common law voluntariness requirement in *Hoey v. State,* 311 Md. 473, 536 A.2d 622 (1988). The defendant had confessed to certain criminal acts to a police officer. *Id.* at 478, 536 A.2d at 624–625. At a suppression hearing before trial, the defendant's expert witness testified that the defendant was suffering from schizophrenia, "render[ing] him incapable of making a knowing, voluntary, and intelligent waiver of his rights." *Id.* at 478, 536

A.2d at 624. In analyzing whether Hoey's confessions were given freely and voluntarily under Maryland non-constitutional law, this Court stated:

> Under Maryland nonconstitutional law, a confession is inadmissible unless it is 'shown to be free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary.' Thus, a confession is involuntary if it is induced by force, undue influence, improper promises, or threats. *Whether particular police conduct is deemed improper* depends on the totality of the circumstances surrounding the defendant's confession, and a number of factors should be considered: the defendant's age and education, the defendant's physical condition and mental capacity, the length of the interrogation, the manner of questioning, and whether there was any physical mistreatment of the defendant.

*Id.* at 483, 536 A.2d at 627 (citations omitted) (emphasis added). *See also Smith v. State,* 189 Md. 596, 603–04, 56 A.2d 818, 821–22 (1948) (stating that "[b]efore a confession can be admitted in evidence, the State must show . . . that no force or coercion was exercised *by the officers obtaining the confession,* to cause the accused to confess") (emphasis added).

Finally, in *Reynolds,* 327 Md. at 507, 610 A.2d at 788, Judge Chasanow, writing for the Court, stated as follows:

> Maryland has followed the old common law rule, which has seemed to adopt a per se exclusion rule that *official* promises of leniency to a defendant in custody that induce a confession render the confession inadmissible. . . . If a confession 'had been induced by any threat of harm, or promise of worldly advantage held out to him by [the interrogating detective], or by his authority, or in his presence and with his sanction, it ought to be excluded.' *Nicholson v. State,* 38 Md. 140, 153 (1873).

(Alteration in original) (emphasis added). *See also State v. Kidd,* 281 Md. 32, 35–36, 375 A.2d 1105, 1108 (1977) ("For a statement to be the free and voluntary act of an accused, it must be obtained without force applied, coercion used, hope

held out or promise made *on the part of the authorities.*") (emphasis added); *Carder v. State,* 5 Md.App. 531, 539, 248 A.2d 495, 500 (1968) (holding that the voluntariness test does not apply to a civilian witness who was not associated with the police and whose only purpose was to assist the injured defendant). In summary, it appears that in every Maryland case applying the rule of exclusion to a defendant's incriminating statement, the incriminating statement in question had been made directly to an officer or sheriff, or in the presence and with at least the implicit sanction of legal authority. *See, e.g., Ball v. State,* 347 Md. at 170, 699 A.2d at 1176; *Burch v. State,* 346 Md. 253, 696 A.2d 443 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 571, 139 L.Ed.2d 410 (1997); *Hof v. State,* 337 Md. 581, 655 A.2d 370 (1995); *Brittingham v. State,* 306 Md. 654, 511 A.2d 45 (1986); *Hillard v. State,* 286 Md. 145, 406 A.2d 415 (1979); *State v. Kidd,* 281 Md. 32, 375 A.2d 1105 (1977); *Biscoe v. State,* 67 Md. 6, 8 A. 571 (1887); *In re Joshua David C.,* 116 Md.App. 580, 698 A.2d 1155 (1997); *Boyer v. State,* 102 Md.App. 648, 651 A.2d 403 (1995); *Ringe v. State,* 94 Md.App. 614, 618 A.2d 266 (1993); *Finke v. State,* 56 Md.App. 450, 468 A.2d 353 (1983); *Law v. State,* 21 Md.App. 13, 318 A.2d 859 (1974), *appeal after remand,* 29 Md.App. 457, 349 A.2d 295 (1975); *Keller v. State,* 2 Md.App. 623, 236 A.2d 313 (1967).

Our survey of Maryland case law turned up only two cases which arguably support Petitioner's proposition. The first of these cases is *Watts v. State,* 99 Md. 30, 57 A. 542 (1904). In *Watts,* we held that the defendant's confession "made to Mr. Marley, a reporter of the 'Evening News,' by the defendant while in jail, in the presence of the Deputy Sheriff and the Jail Warden, and . . . taken down in short hand by Mr. Linzey," [2] *id.* at 35, 57 A. at 544, was inadmissible. Watts was in jail awaiting trial for the murder of his wife. *Id.* at 35, 57 A. at 544. The reporter told the defendant that "it would be possibly better for him if he would make a clean statement, so it would not appear erroneously in the papers; that the papers

---

2. The record does not reflect the professional capacity of Mr. Linzey.

would get it anyway, and as my paper was an evening paper, the correct statement would come out first." *Id.* at 35, 57 A. at 544. Watts confessed and was subsequently convicted. *Id.* at 35, 57 A. at 544. The Court, citing *Nicholson* and *Bram v. United States,* 168 U.S. 532, 561, 18 S.Ct. 183, 194, 42 L.Ed. 568 (1897), reversed, concluding that the State had failed to show that the statement was not obtained by improper means. *Id.* at 35–36, 57 A. at 545. Although it is difficult to say with certainty whether the evidence was excluded on the basis of the reporter's statements alone, or whether the defendant's custody and a presumed acquiescence or sanction of the state officials constituted sufficient state involvement to implicate the voluntariness doctrine, the Court's citation to *Nicholson* suggests the latter interpretation.

The second case is *Scott v. State,* 61 Md.App. 599, 487 A.2d 1204 (1985). Scott, a 15–year–old boy, had been identified by the victim of a rape as the perpetrator. *Id.* at 602, 487 A.2d at 1205. He was taken into custody and interrogated by the police. *Id.* at 602, 487 A.2d at 1205. At the suppression hearing, he testified that two police officers threatened him with a blackjack, and that his father threatened to hit him with a chair if he did not stop smiling. *Id.* at 602, 487 A.2d at 1205. Scott claimed that his confession was involuntary because he was threatened by the police and his father. *Id.* at 602, 487 A.2d at 1205. The intermediate appellate court affirmed the trial court's finding that the police officers did not threaten the defendant. *Id.* at 603–04, 487 A.2d at 1206. As to the father's remark, the court held that it was not a demand to confess, but rather a mere request to change a facial expression. *Id.* at 604, 487 A.2d at 1206. The court, in *dicta,* addressed the fact that the father was not a state agent. Judge Adkins, writing for the court, noted as follows:

Preliminarily, we note that the father was not a State agent. The mere fact that no agency relationship existed, however, would not necessarily preclude a finding that the confession was involuntary. In *Watts v. State,* 99 Md. 30, 57 A. 542 (1904) for example, a reporter's exhortation to a defendant to confess rendered the defendant's confession involuntary.

In a recent analysis of the case, the Court of Appeals noted that the plea to confess was made 'with the sheriff present.' *Hillard,* 286 Md. at 152, 406 A.2d 415.

*Scott,* 61 Md.App. at 604, 487 A.2d at 1206. The *Scott* court seemingly placed significance on the fact that the statement was made in the presence of one with authority over the prisoner.

Both *Watts* and *Scott* involved confessions elicited in the presence of police while the defendant was in police custody. Neither case stands for the proposition that a confession elicited by *purely private conduct* is subject to Maryland's common law voluntariness requirement. Although the language in *Scott* at first blush might suggest that private conduct may trigger the exclusionary rule, the context requires the conclusion that when a confession is made in the presence of one having legal authority over the accused, and in the language of *Nicholson,* "with his sanction," the conduct is not considered private conduct and is sufficient to trigger the common law voluntariness rule.

 We hold that Maryland's common law voluntariness requirement does not apply to confessions elicited by purely private conduct. Consistent with our prior case law, the voluntariness requirement is applicable when a confession is elicited by one in authority, or in his or her presence and with his or her sanction.

## IV.

Because we believe that the primary purpose of Maryland's per se exclusionary rule for involuntary confessions is to protect against government overreaching, we reject Petitioner's argument that "persons in authority," or apparent official authority, should not be limited to state actors. We also reject Petitioner's argument that the rule should include those persons, such as employers, who have "real authority" over the accused and the power to carry out a threat or promise. Exclusion of confessions elicited by purely private persons

does not further the goal of protecting citizens from over-reaching conduct of police or government.

The fear that a confession elicited by private individuals may be untrue or inherently untrustworthy is properly addressed under the laws governing the admissibility of evidence in this state. As the Court of Special Appeals observed with respect to evidence derived by private persons, "[W]e ask the questions that are the concern of the common law of evidence—Is it competent?, Is it trustworthy?, Will it enhance the accuracy of the verdict?" *Jacobs v. State*, 45 Md.App. 634, 646, 415 A.2d 590, 597 (1980).

■ We begin with the proposition that all relevant evidence is admissible. *See* Md. Rule 5–402 **(Relevant evidence generally admissible; irrelevant evidence inadmissible).** Relevant evidence "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Md. Rule 5–401. **(Definition of "relevant evidence").** Obviously, evidence that the trial judge deems unreliable or untrustworthy is not probative to any fact that is of consequence to the determination of the case, and hence, is not relevant evidence. In addition, Md. Rule 5–403, **Exclusion of relevant evidence on grounds of prejudice, confusion or waste of time,** permits a trial judge to exclude evidence if the probative value is substantially outweighed by the danger of unfair prejudice.[3] *See also* Md. Rule 5–601 **(General Rule of competency);** 10 MOORE'S FEDERAL PRACTICE § 403.02[3] (2d ed. 1984) ("If the relevance of the proffered evidence is suspect or slight but would be prejudicial then any justification of its admission is slight or non-existent.").

---

**3.** Md. Rule 5–403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

In *McCleary v. State*, 122 Md. 394, 89 A. 1100 (1914), the defendant excepted to the admission of his confession on the grounds that his alleged confession was involuntary. Noting that it is the fundamental duty of the trial court to pass upon the admissibility of evidence, our predecessors applied the precedent set out in *Nicholson v. State*, and concluded that the evidence as to the involuntary nature of the confession was insufficient to warrant exclusion of it, but rather is to be considered as to the weight to be accorded it. *Id.* at 408, 89 A. at 1106. The Court quoted with approval from the Supreme Court of Connecticut in *State v. Willis*, 71 Conn. 293, 41 A. 820 (1898), as follows:

> The English decisions which have developed the existing practice in excluding admissions are not concerned with their admissibility as relevant, but mainly, if not wholly, with their weight. The question is, shall this evidence, admissible as relevant, be excluded because in the opinion of the judge the conditions for the declaration come within those conditions that make such an admission too unreliable to go to the jury? and the decisions illustrate the diverse exercise of this judicial discretion.

*Id.* at 408–09, 89 A. at 1106.

So, too, today under the laws governing the admission of evidence in this State. The trial judge has the duty and the discretion to decide in the first instance whether under all the circumstances the evidence is admissible. Once the court decides the question of the admissibility *vel non* of a confession, the defendant is entitled to have the jury hear and consider whether a private person made any threats or promises and whether it had any effect upon him or her in deciding to confess. The jury is entitled to consider this testimony, and give it whatever weight it chooses.

## V.

We now turn to the issue of whether the trial court erred in determining that Pappas' written statement to his employers was sufficiently reliable to be admissible against

him at his trial. In our review of the trial court's denial of Petitioner's motion to suppress, we consider only those facts presented during the suppression hearing. *Trusty v. State,* 308 Md. 658, 670, 521 A.2d 749, 755 (1987). Petitioner's account at the hearing varied greatly from Auto Row's account. Although acknowledging these differences, the trial court found that the meeting at issue and the discussion of prosecution was as much the product of Petitioner "bringing up the topic of prosecution" as it was of the Auto Row employees. The court concluded that Petitioner's statement was "not the product of such promise or threat as to render it inherently unreliable." The trial court was not clearly erroneous in determining that Petitioner's confession was sufficiently reliable to be admissible at Petitioner's trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.*