12 A.3d 1193

**Enoch Jermaine HILL**

v.

**STATE of Maryland.**

**No. 149, Sept. Term 2009.**

Court of Appeals of Maryland.

Jan. 26, 2011.

64

Juan P. Reyes, Asst. Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for petitioner.

Brian S. Kleinbord, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS, and BARBERA, JJ.

BARBERA, J.

Petitioner Enoch Jermaine Hill stands convicted of the crimes of sexual abuse of a minor, second degree sexual offense, and unnatural or perverted sexual practice. Those convictions were based, in part, on the admission into evidence of two statements he made to the police during their investigation of the crimes. Petitioner sought suppression of the statements before trial, claiming that both statements were obtained in violation of Maryland's common law rule that a statement by the accused that is the product of improper police inducement is involuntary and, thus, inadmissible.

Petitioner challenged the denial of the suppression motion on appeal to the Court of Special Appeals. That court, finding no merit in the claim, affirmed the convictions in an unreported opinion. We granted a writ of certiorari, *Hill v. State,* 411 Md. 740, 985 A.2d 538 (2009), to answer the following question:

> Do statements made by an interrogating officer to a suspect implying a victim's inclination not to prosecute if the suspect were to apologize constitute an improper inducement under Maryland common law where the suspect relied on those statements in making admissions to the police?

For the reasons that follow, we hold that Petitioner's statements to the police were indeed the product of an improper inducement, entitling him to a new trial at which the statements may not be used against him.

I.

Because the legal question we decide involves the correctness of a ruling on a pre-trial motion to suppress evidence, it is unnecessary to discuss in detail the evidence that was

developed at trial.[1] It is sufficient to note that the young victim of the incidents in question, whom we shall refer to simply as "Randy," met Petitioner at the church where Petitioner, an ordained minister, was involved in the church's Youth Department. Over time, Randy and Petitioner grew close and, during the summer of 2004, Randy became Petitioner's godson. Randy's mother occasionally allowed Randy to spend weekends with Petitioner at his home in Anne Arundel County, Maryland.

In April 2006, the Anne Arundel County Police Department began investigating Petitioner concerning allegations that he sexually abused Randy approximately a year and a half earlier, when Randy was eight or nine years old. In the course of that investigation, the police interviewed Petitioner at the police station. At that time, Petitioner disclosed that he had engaged in sexual contact with Randy on a number of occasions and, at the suggestion of the interrogating officer, he drafted a hand-written note to Randy apologizing for the sexual abuse.

Petitioner was later arrested and charged in the Circuit Court for Anne Arundel County with the various sexual offenses we have mentioned. He filed a motion to suppress the oral and written statements that Detective McLaughlin obtained during the interview.

### The Motion Hearing

Detective Patrick McLaughlin, a sixteen-year veteran of the police department with more than three years' experience in the child abuse unit, testified to the following at the hearing on the motion. Shortly after being assigned to investigate the case, he interviewed Randy, then twelve years old, at his home in Baltimore City. Following the interview, Detective McLaughlin suggested that Randy place a one-party consent

---

1. In deciding that issue, we are limited to the facts that were developed at the hearing on Petitioner's motion to suppress the statements. *Longshore v. State,* 399 Md. 486, 498, 924 A.2d 1129, 1135 (2007). We have consulted the trial transcript for the sole purpose of providing relevant factual background.

telephone call [2] to Petitioner, to "elicit some type of admission or acknowledgment that the abuse occurred." Randy and his mother agreed to make the phone call. The relevant portions of the call between Randy and Petitioner are set forth below:

[Randy]: But you know I, I missed you and I wanted to call to say hi.

[Petitioner]: I miss you too. Oh my, God. I been thinking about you wondering what you doin and stuff.

[Randy]: But you know I been thinking a lot about what happened between us and . . .

[Petitioner]: I know.

[Randy]: . . . remember that?

[Petitioner]: Yeah.

[Randy]: And I kind of, it kind of made me uncomfortable.

[Petitioner]: Yeah.

[Randy]: After I thought about it (inaudible) it made me uncomfortable.

[Petitioner]: Yeah, well you know I, I think we're cool now . . .

[Randy]: Yeah.

[Petitioner]: . . . so.

[Randy]: But you know, when you touched me or the way I touched you, I don't, I don't want you, I don't want you to get in trouble but just I promise that it won't happen again.

[Petitioner]: Yeah, I just, you know, the Holy Ghost is a wonderful teacher and I love the Lord (inaudible), you know, God is just a wonderful God.

[Randy]: Um, can I ask you one thing?

---

**2.** It is lawful in Maryland "for an investigative or law enforcement officer acting in a criminal investigation . . . to intercept a wire, oral, or electronic communication in order to provide evidence" of the commission of one of eighteen offenses, one of which is "child abuse in the first or second degree." Md.Code (1974, 2006 Repl.Vol.), § 10–402(c)(2)(ii) of the Courts and Judicial Proceedings Article.

[Petitioner]: What?

[Randy]: Can you apologize to me?

[Petitioner]: Hmm?

[Randy]: Can you apologize to me?

[Petitioner]: I just want to, you know, I just want to go to heaven and forget what God is doing and continue to do, and I know that God is going to continue bless me and I just, you know, God is, we're in a revival right now in Virginia, and God is, I can't begin to describe all the things that God is, I can't begin to describe it, you know.

[Randy]: Oh, um, yeah but . . .

[Petitioner]: (Inaudible)

[Randy]: But can you apologize to me?

[Petitioner]: I, I, Randy I don't wanna go into all that right now. I just wanna let God do his work. God is, is just doing great things right now and . . .

[Randy]: Can you just apologize to me?

[Petitioner]: I really want . . . (inaudible)

[Randy]: Well, maybe not apologize but just to admit that that did happen.

[Petitioner]: I, I'm not going into the (inaudible) I just want God . . .

[Randy]: Okay, if you don't, if you don't apologize I'm gonna have to tell my mother.

[Petitioner]: I'm not, I'm not going to, why are you, why are you going to this route?

[Randy]: I just want you to apologize to me.

[Petitioner]: (inaudible) What did you say when you first got on the phone?

[Randy]: I miss you and I wanted to call and say hi and I been thinking a lot about what happened between us and it made me uncomfortable.

[Petitioner]: Yeah, I, you know.

[Randy]: But I, I, I don't want to you, I don't want to get you in trouble.

[Petitioner]: Alright, and I understand cause we uh, both have done . . .

[Petitioner]: I, I never, we, we have been through all this. We have been through all this already and I, I just don't even want to, I want to go to heaven (inaudible).

[Randy]: I know but you haven't, I haven't forgiven you yet cause you haven't apologized to me.

[Petitioner]: I thought we had already been down this road, that happened a long time ago and I just thank God that we . . .

[Randy]: But you never apologized.

[Petitioner]: Okay, yeah we've been down this road for everything that had happened but I do apologize.

[Randy]: So you apologize that you touched me in the wrong place.

[Petitioner]: I, I'm not.

[Randy]: I just wanna put, I just wanna put this behind us.

[Petitioner]: It is, it is behind us right now.

[Randy]: It is behind us, okay.

[Petitioner]: Yes, it is behind us, I guarantee (inaudible) God is (inaudible) and I love him . . .

Four days after that telephone conversation, Detective McLaughlin went to Petitioner's home and, when told that Petitioner was not home, left him a telephone voice message. When Petitioner returned the call later that morning, Detective McLaughlin notified him that "his name came up in an investigation" and "it wasn't that big of a deal." Detective McLaughlin asked Petitioner to come to the police station for an interview. Petitioner agreed to take part in the interview.

When Petitioner arrived at the police station he was greeted by Detective McLaughlin, who asked Petitioner to accompany him to the interview room. The interview room measured twelve feet long and six feet wide and contained three chairs and a table. Detective Tracy Morgan, who, like Detective McLaughlin, was dressed in business attire, assisted Detective McLaughlin in the interview. Both detectives secured their weapons in a lockbox outside of the interview room. The door to the interview room was closed but unlocked. Petitioner sat closest to the door, with the two detectives seated opposite him. The interview started at 11:30 a.m. and lasted "approximately for a half an hour." Following the interview, Petitioner left the police station.

Detective McLaughlin began the questioning by asking Petitioner "if he knew why [Detective McLaughlin] had asked him to come to the office." Petitioner replied that "he was surprised that he received a call, but had a suspicion as to why [the detective] called him." Shortly thereafter, Detective McLaughlin advised Petitioner that the police had recorded the telephone call from Randy to Petitioner, during which Petitioner apologized to Randy for touching him inappropriately. Detective McLaughlin informed Petitioner that "Randy and his mother did not want to see him get into trouble, but they only wanted an apology." He then questioned Petitioner about the frequency of the sexual encounters between Petitioner and the victim. Petitioner responded that he had "masturbated Randy" on six occasions. Detective McLaughlin then suggested that Petitioner write an apology note to Randy and provided Petitioner with writing materials. Petitioner presented Detective McLaughlin with the following letter:

Hi Randy:

I am very sorry for everything that happened between us, God knows! I wish this had never happened and it will never happen again. God is blessing both of us greatly and since we have forgiven each other, I know God has forgiven us to [sic].

/s/ Rev. Enoch Hill

At the conclusion of the interview, Detective McLaughlin informed Petitioner that the Anne Arundel County State's Attorney's Office reviews all of the police department's cases.

Petitioner, in turn, testified that he went voluntarily to the police station and was not threatened by the police before or during the interview. Moreover, he suspected at the time of the telephone call that it was being recorded, and he was aware at the time of the interview that people who sexually abuse children face criminal charges. Petitioner confirmed Detective McLaughlin's statement that "Randy and his mother did not want to see him get into trouble, but they only wanted an apology," adding that Detective McLaughlin had also said something like "they don't want to go through a long trial." Petitioner further testified that, when asked by Detective McLaughlin to "just write a letter," he did so because he is "a minister, and all [he] wanted to do was have this over and not be brought to shame because of a lie." In addition, he believed supplying an apology letter "would just end the nightmare and what [he] was going through."

The court heard arguments of counsel, then ruled:

[I]n terms of the [statement by Detective McLaughlin concerning the victim's family's desire not to see Petitioner get into any trouble and to receive an apology], I think the detective was very careful in his questions. And [defense attorney], while it walks right up to the line of what appears to be an inducement, I think that the detective was extremely careful to make sure that the detective did not make any specific threats, promises or inducements of State action which would be the Police Department won't charge or the State's Attorney won't charge, or the detective would make sure that no charges take place.

And you know, when I consider the voluntariness of the statement, I have to look at the totality of the circumstances. The gentleman was invited there by way of a phone call. He went there on his own. He drove. The gentleman tells me that he knew that there were these allegations, and these possible charges. The gentleman told

me that he believed his earlier phone call was recorded. The gentleman told us there were no threats. The detective indicates no weapons were present. He is not in uniform. There is no alcohol. It is not late at night. There is not extended questioning for 24 to 36 hours, like Prince George's County is well known for. The gentleman has a college degree. I don't think the officer implied that the State or the police, or anyone, would not prosecute. And I think he walked carefully to that line and never crossed the line. So the Court is going to deny the request to suppress the statements. . . .

### The Trial and Appeal

Petitioner was tried before a jury. The State introduced, among other evidence, the oral and written statements Petitioner gave to the police during the interview. As mentioned, the jury found Petitioner guilty of sexual abuse of a minor, second degree sexual offense, and unnatural or perverted sexual practice.

On appeal to the Court of Special Appeals, Petitioner argued that the Circuit Court erred by denying his motion to suppress the oral and written statements because they were induced by Detective McLaughlin's statement that the "victim's family did not want to see Petitioner get into any trouble and only wanted an apology" for his sexual abuse of Randy. Petitioner relied on *Hillard v. State*, 286 Md. 145, 406 A.2d 415 (1979), and its progeny, *Winder v. State*, 362 Md. 275, 765 A.2d 97 (2001), and *Knight v. State*, 381 Md. 517, 850 A.2d 1179 (2004). Those cases stand for the proposition that, if an accused is induced to make a statement in reliance on a law enforcement officer's express or implied assertion that the accused would receive some sort of special help or consideration in connection with a subsequent prosecution, then the accused's statement is deemed involuntary and therefore inadmissible at the accused's trial. *See, e.g., Knight*, 381 Md. at 533–34, 850 A.2d at 1188–89.

The State countered that Detective McLaughlin's statement concerning the family's desire for an apology was not an improper inducement. The State focused on the facts that, during the interview, the detective did not expressly promise Petitioner that he would avoid criminal prosecution, and he informed Petitioner at the end of the interview that the Anne Arundel County State's Attorney's Office reviews all of the police department's cases.

The Court of Special Appeals, in an unreported opinion, upheld the motion court's denial of the suppression motion. Based on its interpretation of *Hillard* and its progeny, the Court of Special Appeals agreed with the motion court's reasoning that an improper inducement would have required an offer by Detective McLaughlin to dismiss the charges or otherwise assist Petitioner in the criminal case. The Court of Special Appeals concluded that, "[u]nder the cases cited herein, including *Winder* and *Knight,* the evidence was sufficient to support the motions court's ruling. . . . Appellant may have believed that he was going to avoid prosecution, but he was never so informed by the police."

## II.

"Only voluntary confessions are admissible as evidence under Maryland law." *Knight,* 381 Md. at 531, 850 A.2d at 1187. A confession is admissible only "if it is freely and voluntarily made and the defendant making the confession knew and understood what he [or she] was saying. . . ." *Id.* at 531–32, 850 A.2d at 1187–88 (internal quotation marks and citation omitted). To be voluntary, a confession must satisfy federal and state constitutional strictures as well as the Maryland common law rule that a confession is involuntary if it is the product of an improper threat, promise, or inducement by the police. *Id.* at 532, 850 A.2d at 1187–88. Petitioner relies only on the common law in support of the claim that his oral and written statements during the police-station interview should have been suppressed.

 "When a criminal defendant claims that his or her confession was involuntary because of a promise made to him or her by interrogating officers, the State must present evidence in order to refute the claim." *Id.*, 850 A.2d at 1188; *see generally Taylor v. State*, 388 Md. 385, 400–01, 879 A.2d 1074, 1083–84 (2005) (discussing improper inducements). The voluntariness of a confession is first litigated at a hearing on a motion to suppress the confession, at which the State must prove the voluntariness of the confession by a preponderance of the evidence.[3] *See Knight*, 381 Md. at 532, 850 A.2d at 1188. Courts that are asked to determine at a suppression hearing whether a confession was made voluntarily must examine the totality of the circumstances affecting the interrogation and the confession. *See id.*, 850 A.2d at 1188. A non-exhaustive list of factors to consider in that analysis includes the length of interrogation, the manner in which it was conducted, the number of police officers present throughout the interrogation, and the age, education, and experience of the suspect. *See Williams v. State*, 375 Md. 404, 429, 825 A.2d 1078, 1092 (2003); *see also Hof v. State*, 337 Md. 581, 596–97, 655 A.2d 370, 377–78 (1995) (listing additional factors to be considered).

 Although a totality of the circumstances analysis is standard practice for determining whether an accused's statement to the police was voluntarily made, not all of the factors that bear on voluntariness are of equal weight; certain factors are "transcendent and decisive." *Williams*, 375 Md. at 429, 825 A.2d at 1092. Thus, "a confession that is preceded or accompanied by threats or a promise of advantage will be held involuntary, notwithstanding any other factors that may suggest voluntariness, unless the State can establish that such threats or promises in no way induced the confession."

---

**3.** If the State satisfies that burden and the motion to suppress is denied, then the confession is admissible at trial. If the voluntariness of the confession is generated as a trial issue, then the State must prove, beyond a reasonable doubt, that the confession is voluntary. *Knight*, 381 Md. at 532, 850 A.2d at 1188; *Hof v. State*, 337 Md. 581, 605–06, 655 A.2d 370, 382 (1995).

*Knight,* 381 Md. at 533, 850 A.2d at 1188 (quoting *Williams,* 375 Md. at 429, 825 A.2d at 1092–93).

Petitioner argues that the statements he gave during the interview were induced by the statement of Detective McLaughlin that "Randy and his mother did not want to see [Petitioner] get into trouble, but they wanted an apology" for what happened. Petitioner's argument triggers application of the principles outlined in *Hillard.*

In *Hillard,* we established a two-pronged test for determining whether a confession is the result of an improper inducement by law enforcement. Under that test, an inculpatory statement is involuntary and must be suppressed if: (1) any officer or agent of the police force promises or implies to a suspect that he will be given special consideration from a prosecuting authority or some other form of assistance in exchange for the suspect's confession, and (2) the suspect makes a confession in apparent reliance on the police officer's explicit or implicit inducement. *Hillard,* 286 Md. at 153, 406 A.2d at 420. "Both prongs of the *Hillard* test must be satisfied before a confession is deemed to be involuntary." *Winder,* 362 Md. at 310, 765 A.2d at 116.

The first prong of the *Hillard* test is an objective one. *See Winder,* 362 Md. at 311, 765 A.2d at 116. In other words, when determining whether a police officer's conduct satisfies the first prong, the court must determine whether a reasonable person in the position of the accused would be moved to make an inculpatory statement upon hearing the officer's declaration; an accused's subjective belief that he will receive a benefit in exchange for a confession carries no weight under this prong. *See Knight,* 381 Md. at 534, 850 A.2d at 1189. Ultimately, the court must determine "whether the interrogating officers or an agent of the police made a threat, promise, or inducement." *Id.,* 850 A.2d at 1189. The threat, promise, or inducement can be considered improper regardless whether it is express or implied. *Winder,* 362 Md. at 308, 765 A.2d at 115.

██ If the suppression court finds that the law enforcement officer improperly induced the accused, then the second prong of the *Hillard* test requires the court to determine whether the accused relied on that inducement in making the statement he or she seeks to suppress. *Hillard,* 286 Md. at 153, 406 A.2d at 420; *Knight,* 381 Md. at 534, 850 A.2d at 1189. Specifically, the court must examine "whether there exists a causal nexus between the inducement and the statement. . . ." *Knight,* 381 Md. at 534, 850 A.2d at 1189.

 The accused is not required, however, to prove his or her reliance on the improper inducement. Rather, the State bears the burden of proving, by a preponderance of the evidence, that the accused did not make the inculpatory statement in reliance on the improper inducement. *Hillard,* 286 Md. at 153, 406 A.2d at 420; *Winder,* 362 Md. at 310, 765 A.2d at 116. Factors relevant to the reliance analysis include the amount of time that elapsed between the improper inducement and the confession, *Winder,* 362 Md. at 312, 765 A.2d at 117; whether any intervening factors, other than the officer's statement, could have caused the confession, *see id.,* 765 A.2d at 117; and the testimony of the accused at the suppression hearing related to the interrogation, *see Knight,* 381 Md. at 535, 850 A.2d at 1189–90.

 "The trial court's determination regarding whether a confession was made voluntarily is a mixed question of law and fact." *Knight,* 381 Md. at 535, 850 A.2d at 1189 (quotation marks and citation omitted). The suppression court's ruling that a confession is voluntary is subject to *de novo* review on appeal, with credit given to the suppression court's first-level factual findings. *Winder,* 362 Md. at 310–11, 765 A.2d at 116. We review "evidence and inferences that may be reasonably drawn therefrom in a light most favorable to the prevailing party on the motion. . . ." *State v. Luckett,* 413 Md. 360, 375 n. 3, 993 A.2d 25, 33 n. 3 (2010) (quotation marks and citation omitted). As mentioned, *see supra* note 1, appellate review of a suppression court's ruling is limited to

the record developed at the suppression hearing. *Winder,* 362 Md. at 311, 765 A.2d at 116.

## III.

Petitioner contends that he was improperly induced to inculpate himself by Detective McLaughlin's statement that "Randy and his mother did not want to see [Petitioner] get into trouble, but they only wanted an apology" for what happened. He argues in connection with the first prong of *Hillard* that he reasonably believed he could avoid criminal charges by making the inculpatory oral and written statements. Not surprisingly, the State responds that Detective McLaughlin's statement did not constitute an improper inducement because the detective did not make an express or implicit promise either to assist Petitioner in avoiding prosecution or to dismiss any potential criminal charges.

■ We have said that the first prong of the *Hillard* test requires an objective analysis. The question, therefore, is whether a reasonable layperson in the position of Petitioner would have inferred from Detective McLaughlin's statement that he could gain the advantage of non-prosecution or some other form of assistance, upon making an apology to the victim and his family.

Detective McLaughlin, after informing Petitioner that he had recorded Petitioner's conversation with Randy, told Petitioner that the victim's family "did not want to see him get into any trouble, but they only wanted an apology." In this context, an objectively reasonable interpretation of the word "trouble," is trouble with the law. *See Biscoe v. Maryland,* 67 Md. 6, 8–9, 8 A. 571, 571 (1887) (stating that the detective's telling the accused "to tell the truth [ ] and have no more trouble about it" was an inducement "of the strongest kind").

Moreover, a reasonable layperson in Petitioner's position, hearing Detective McLaughlin's statement, would not necessarily understand that the State could prosecute him or her, even against the wishes of the victim or victim's family. To the contrary, it is reasonable for a layperson in that position to

infer from the officer's statement that the victim's family, upon receipt of an apology, would either recommend to the prosecutor that criminal charges not be pursued or decline to participate in any prosecution. We therefore conclude that Petitioner had an objectively reasonable belief, based on the detective's statement, that by making an inculpatory statement that included an apology to the victim's family he might avoid criminal charges or, at the least, lessen the likelihood of a successful criminal prosecution.[4]

To be sure, Detective McLaughlin's statement in this case differs from the statements we have held in previous cases to be improper inducements under the *Hillard* test. Here, the detective implied that the victim and his family, not the interrogating officer, would assist Petitioner in avoiding prosecution. Our previous cases involved promises made by the interrogating officers to exercise their own discretion or tell prosecutors to exercise their discretion in favor of the accused. In *Hillard*, we held that a detective improperly induced the suspect to make a statement by promising that he would "go to bat" for the suspect with the State's Attorney's office and the court. 286 Md. at 153, 406 A.2d at 420. Similarly, in *Winder*, we held that a detective improperly induced the accused to make a statement by saying, "I can make a promise, okay? I can help you. I could try to protect you." 362 Md. at 314, 317, 765 A.2d at 118, 120. We reasoned in *Winder* that the interrogating officer "offered [the suspect] an apparent means to garner leniency from the state prosecutors and the trial court and protection from an angry mob." *Id.* at

---

4. The dissent by Judge Harrell bases in part its conclusion that Detective McLaughlin's statement was not an improper inducement on the fact that the detective informed Petitioner that the State's Attorney made all charging decisions. 418 Md. 62, 12 A.3d 1193 (2011) (Harrell, J., dissenting). The dissent overlooks, however, that Detective McLaughlin testified at the suppression hearing that he informed Petitioner of that fact at the end of the interview, only *after* Petitioner had provided the inculpatory statements. Consequently, Detective McLaughlin's statement concerning the charging decision is of no relevance either to whether the detective earlier made an improper inducement or to whether Petitioner relied on that inducement.

317, 765 A.2d at 120. And in *Knight* we held that the statement, "if down the line, after this case comes to an end, we'll see what the State's Attorney can do for you, with your case, with your charges," was an improper inducement because it was "clearly a promise [by the interrogating officer] to exercise advocacy on Knight's behalf to convince the prosecutor to exercise discretion in Knight's favor." 381 Md. at 537, 850 A.2d at 1190.

We disagree with the State, however, that only statements offering or implying the officer's assistance in avoiding prosecution qualify as inducements under *Hillard* and its progeny. The thrust of the *Hillard* test is to ensure that an incriminating remark is "free of any coercive barnacles that may have attached by improper means to prevent the expression from being voluntary." *Hillard*, 286 Md. at 150, 406 A.2d at 418. "Coercive barnacles" can take many forms and are not limited to instances in which interrogating officers promise *their* assistance to the accused. Thus, it is of no consequence that Detective McLaughlin neither promised nor suggested that he would help Petitioner avoid prosecution. It matters only that Detective McLaughlin promised or suggested such assistance by one or more persons who, from the perspective of a layperson in Petitioner's position, could reasonably provide it.

This case differs significantly from *Reynolds v. State*, 327 Md. 494, 610 A.2d 782 (1992), upon which the State relies. In *Reynolds*, we held that a detective's statement to the accused that telling the truth about a molestation would "help" the accused's daughter was not an improper inducement because the detective implied merely a collateral benefit unrelated to the possibility of a criminal prosecution. 327 Md. at 511–12, 610 A.2d at 790–91. Here, by contrast, the detective, by informing Petitioner that the victim's family "did not want to see him get into trouble, but they only wanted an apology," implied a direct benefit to Petitioner that he could avoid criminal prosecution by making inculpatory statements.

 Turning to the second prong of the *Hillard* test, we conclude that the State failed to meet its burden of showing,

by a preponderance of the evidence, that Petitioner's inculpatory statements were not made in reliance on Detective McLaughlin's improper inducement. Petitioner testified at the suppression hearing that "all he wanted to do was have this over and not be brought to shame over a lie," and that he was under the impression that confessing would "just end this nightmare." That testimony reflects Petitioner's belief that providing the inculpatory statements and an apology would end the matter without criminal prosecution.

The State characterizes Petitioner's testimony as "self serving." Self-serving though Petitioner's testimony may have been, the suppression court gave no indication that the testimony was unworthy of belief. Detective McLaughlin's testimony, moreover, did nothing to suggest the contrary. In any event, it was up to the State, at the time of the suppression hearing, to persuade the court that Petitioner's testimony was not to be believed. The State did not even attempt to do so, in effect abandoning any argument that, assuming an improper inducement, Petitioner's subsequent statement was not made in reliance on it.[5]

Furthermore, the State has not pointed to any facts suggesting that the taint of the improper inducement was cured by intervening attenuating circumstances, as was the case in *Johnson v. State*, 348 Md. 337, 703 A.2d 1267 (1998). In *Johnson*, we held that the State had established that the defendant's inculpatory statements were not the result of reliance on improper inducements because the defendant confessed two days after the inducements; he confessed in a

---

5. For this reason, we reject the State's contention that, because the suppression court did not reach the second prong of the *Hillard* test, the only relief to which Petitioner is entitled is a limited remand for the suppression court's consideration of the reliance prong of the *Hillard* test. Our cases make plain that, when a defendant testifies that the police used coercive tactics to obtain inculpatory statements, the State must rebut the defendant's testimony. *Knight*, 381 Md. at 532, 850 A.2d at 1188; *Gill v. State*, 265 Md. 350, 353, 289 A.2d 575, 576 (1972); *Streams v. State*, 238 Md. 278, 283, 208 A.2d 614, 616 (1965). We will not grant the State a second opportunity to prove that Petitioner did not rely on the improper inducement.

location different from the one in which the inducements were made; he initiated contact with the police officer to whom he confessed; and he confessed to an officer who was not present at the time of the inducements and who did not offer any other inducements. *Id.* at 351–52, 703 A.2d at 1275. In contrast to the facts presented in *Johnson,* Petitioner made the inculpatory statements directly to Detective McLaughlin on the heels of the detective's offering the inducement, in the midst of an interrogation that was prompted by the detective's request that Petitioner come to the police station to be interviewed. The timing of Petitioner's inculpatory statements and the lack of any intervening attenuating events further support the conclusion that Petitioner relied on Detective McLaughlin's inducement.

We are not persuaded by the State's arguments that Petitioner did not rely on the inducement because Detective McLaughlin's statement "promised him nothing whatsoever" and merely restated what the victim had already requested from Petitioner via telephone, that is, an apology. For all the reasons we have discussed, we reject the first of these arguments. As for the second, it is one thing for Randy to request Petitioner's apology in a recorded telephone conversation. It is entirely another for Detective McLaughlin, in a formal police interview setting, to request an apology on behalf of the family, while stating in the same breath that the family does not want to see Petitioner get into any trouble.

In sum, we hold that both prongs of the *Hillard* test are satisfied, rendering involuntary Petitioner's oral and written statements to Detective McLaughlin. The suppression court erred when it determined that those statements were admissible at trial. Accordingly, we reverse the judgment of the Court of Special Appeals and remand the case to that court with directions to reverse the judgments of conviction and remand the case for a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENTS OF THE CIRCUIT COURT OF ANNE ARUNDEL**

COUNTY AND REMAND FOR A NEW TRIAL. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY ANNE ARUNDEL COUNTY.

HARRELL, BATTAGLIA, and MURPHY, JJ., Dissent.

HARRELL, J., in which BATTAGLIA and MURPHY, JJ., join.

I dissent. The verbal guile exhibited by Detective McLaughlin in his thirty-minute questioning of Hill, which followed Hill's recorded telephone conversation with the victim, did not cross the line into the prohibited territory of promises, threats, or inducements, such as would render Hill's interview statements involuntary under Maryland common law principles. The suppression judge and the Court of Special Appeals got it right.

During cross-examination of Hill at the suppression hearing, Hill[1] acknowledged that he apologized to the victim in the recorded telephone call, a fact that he was reminded of, with no surprise, by the Detective at the inception of the face-to-face interview. Hill admitted that McLaughlin never said "This [apology] will end it [the police investigation]," and conceded that he understood that persons who commit sex crimes against children usually get arrested and charged criminally.

During oral argument at the suppression hearing, defense trial counsel emphasized as the improper inducement McLaughlin's statement to Hill that "Randy and his mother did not want to see [Hill] get into trouble; they only wanted an apology." Predicated on this, the defense asserted that Hill believed that "all he needed to do was make an apology and that would end the case."[2] The hearing judge saw it otherwise, as revealed in the following exchange with defense counsel:

---

1. Hill acknowledged that he had graduated from a "bible college in Tennessee" and was a "minister."

2. This is the response of a "reasonable lay person," as claimed by the Majority opinion? Please!

[The Court]: Suppose the officer said, "I'll make sure this case ends if you apologize." What do you think of that?

[Defense Counsel]: I think that would be the same, and just stronger, for Mr. Hill.

[The Court]: You don't see it as more of a dividing line? I mean, suppose the officer tells him, "You know, I'm sure that you'd want to reconcile with your God. It may help you in terms of your relationships [sic] with your God if you apologized," and at that point the gentleman says, "You're right, I want to apologize." Is that an improper inducement?

[Defense Counsel]: No, that is different because—

[The Court]: Okay. How is that different from say, "If you apologize, you'll make the world well between you and your God, and if you apologize, you'll make the world well between you and the victim"? Where is the promise that the detective is making him that with the apology will come the inducement which is, no prosecution, dismissal of the charges, or something like that?

The court noted further that "the detective is not saying, 'I will make sure you don't get in trouble.'" Moreover, it was made clear to Hill by McLaughlin, in the course of the interview, that only the State's Attorney would or could make any charging decision.[3]

"A mere exhortation to tell the truth is not enough to make a statement involuntary." *Reynolds v. State*, 327 Md. 494,

---

3. The Majority opinion (at 79 n. 4, 12 A.3d at 1203 n.4) suggests that McLaughlin advised Hill about the State's Attorney's role "only after Petitioner had provided the inculpatory statements." The record, I think, is not so clear as the Majority maintains. McLaughlin, during cross-examination at the suppression hearing, stated: "I told him at the end of the interview that our State's Attorney's Office reviews all of our cases." In the opinion of the Court of Special Appeals in this case, however, the panel stated that "[t]he questioning ended with [Hill], at the detective's request, writing the following "apology" letter:

 Hi Randy [the victim]:
 I am very sorry for everything that happened between us.

507, 610 A.2d 782, 788 (1992); *see also Ball v. State*, 347 Md. 156, 174, 176, 699 A.2d 1170, 1178–79 (1997) (finding no improper inducement when officer told suspect that it would be "much better" if he told his story in his own words, by writing a letter of explanation to victim's family); *Ralph v. State*, 226 Md. 480, 486–87, 174 A.2d 163, 166–67 (1961). In *Knight v. State*, 381 Md. 517, 525, 535, 850 A.2d 1179, 1183, 1190 (2004), the officer told the accused, in the course of administering *Miranda* advisements, that the "prosecutor would be made aware of his cooperation." This was found by us to be "not a promise of help or special consideration...." *Knight*, 381 Md. at 535, 850 A.2d at 1190.

I would conclude that Detective McLaughlin's relevant statement to Hill fell on the continuum leading to improper inducements well short of the point of no return. Rather, a mere exhortation appealing to a suspect's shame, such that he or she should apologize to a victim (and his/her family), amounts to no more than the mere exhortation to tell the truth found by our cases not to be improper. The tension between the true "coercive barnacles" described in *Hillard v. State*, 286 Md. 145, 150, 406 A.2d 415, 418 (1979), and the permissive appeals to a suspect approved in *Reynolds, Ball, Ralph*, and *Knight* is maintained best by affirming here the judgments of the Court of Special Appeals and the Circuit Court for Anne Arundel County.

Judge BATTAGLIA (pronounced Ba-tal-ia) and Judge MURPHY authorize me to state that they join the views expressed in this dissent.

---

> God knows! I wish this had never happened and it will never happen again. God is blessing both of us greatly and since we have forgiven each other, I know God has forgiven us to[o].
>
> Rev. Enoch Hill /s/

Thus, one reasonable interpretation of the record is that McLaughlin advised Hill of the State's Attorney's role *before* Hill wrote out the inculpatory written statement. Whatever interpretation of this point one adopts is not so material as would change my view of the proper disposition of this case.

MURPHY, J., dissenting.

While I join Judge Harrell's dissenting opinion, I would also affirm the judgment on the well settled ground that an incriminating statement made subsequent to an improper inducement is nonetheless admissible *if* the trier of fact is persuaded beyond a reasonable doubt that the inducement did not, in any way, cause the defendant to make the statement.

In the case at bar, before being told about what the victim allegedly wanted, Petitioner was well aware that (1) the officers had "taped" his telephone conversation with the victim, and (2) he had made incriminating statements during his interrogation. Under these circumstances, the evidence was sufficient to persuade the jury beyond a reasonable doubt that Petitioner's written apology was not made in reliance upon the officer's statement about what the victim allegedly wanted, but rather in a strategic effort to avoid criminal charges. I would therefore hold that, although Petitioner was entitled to a jury instruction to the effect that the jurors must "disregard the apology unless you are persuaded beyond a reasonable doubt that the inducement did not in any way cause the defendant to make the apology," Petitioner (who did not request such an instruction) was not entitled to exclusion of his apology.