*Anderson Lee Covel, Jr. v. State of Maryland*, No. 1094, September Term 2021.  Opinion by Raker, J.


**CRIMINAL LAW — JURY INSTRUCTION — "MARYLAND AND FEDERAL VOLUNTARINESS TEST " — STANDARD**

The trial court declined to issue a full voluntariness instruction.  Appellant claimed that this was in error as there was evidence of coercion. We find no evidence of coercion that would have necessitated that portion of the jury instruction. Moreover, we found it important to delineate between the Federal and Maryland test for voluntariness.

Circuit Court for Baltimore City
Case No. 119248020

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

No. 1094

September Term, 2021

_____

ANDERSON LEE COVEL, JR.

v.

STATE OF MARYLAND

_____

Graeff,
Tang,
Raker, Irma S.
  (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Raker, J.

_____

Filed: July 7, 2023

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

*At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland.  The name change took effect on December 14, 2022.

Appellant Anderson Lee Covel, Jr. was convicted in the Circuit Court for Baltimore City of first-degree murder, use of a handgun in commission of a crime, and possession of a regulated firearm by a disqualified person. He presents the following questions for our review:

1. "Did the trial court require proper authentication to admit CCTV surveillance video as a business record produced through the non-custodian witness provided by the State?

2. Did the Circuit Court err in refusing to read paragraph 2 of the jury instruction concerning the voluntariness of the defendant's statement?

3. Was the evidence sufficient to support the conviction of first-degree murder and use of a handgun in the commission of a crime of violence?

4. Did the trial court err in allowing the firearms examiner to testify beyond the scope of expertise for which he was accepted by the court?"

We shall hold that the trial court did not err, and we shall affirm.

**I.**

Appellant was indicted by the Grand Jury for Baltimore City of first-degree murder, use of a handgun during the commission of a crime of violence, and possession of a regulated firearm by a disqualified person. Appellant was convicted of all charges. The court imposed a term of incarceration of life imprisonment for first-degree murder, a concurrent twenty-year sentence for use of a handgun in the commission of a crime of violence, and a consecutive ten-year sentence for possession of a regulated firearm by a disqualified person.

On the morning of May 30, 2019, Baltimore City Police Officer Debrosse responded to a shooting where he witnessed medics rendering aid to a black male who seemed lifeless. The victim was Mr. Donnie Walton. The shooting was taped by a CCTV surveillance camera operated by the Citiwatch program. The surveillance footage showed someone drive to the area in a white Lincoln Town Car, then sit idle in the car for several minutes. Subsequently, the driver of the Lincoln exited the car and crossed the street to interact with Mr. Walton. Mr. Walton began to walk away but then is seen on the video surveillance falling to the ground. His body was found where he had fallen as noted in the CCTV footage. An autopsy revealed that he died from multiple gunshot wounds.

When the police arrived, the Lincoln was parked where the driver had left it, on the corner of Greenmount and 21st Street. The police searched the vehicle and found an expired insurance card with the name Andolphous Covel and an address. After interviewing Mr. Covel, the police obtained an arrest warrant for his relative, appellant Anderson Covel. The police arrested appellant in North Carolina. During his post-arrest interview with Detective Reichenberg, appellant admitted that he drove to the block and got out of the car. Appellant maintained that he did not shoot Mr. Walton. The police recorded the conversation and played the recording at trial. Appellant did not object.[1] During the interview the following exchange occurred:

COVEL: What do I say? Like, I don't –

DETECTIVE: Well, you can say this. Were there other

---

[1] Appellant filed a pre-trial motion pursuant to Maryland Rules 4-252 and 4-253 to suppress any statements he made to the police in North Carolina. In the motion he stated that any statements or confessions he made were elicited without consent or proper procedural

2

circumstances as to -- led up to what happened happening? Did that guy do something to you? Was it something personal? I mean, that's –

COVEL: I mean, it's -- I don't know.

DETECTIVE: You don't know?

COVEL: Shit just –

DETECTIVE: Shit just got crazy?

COVEL: Like, I don't -- I don't know. Like, I don't –

DETECTIVE: Did he piss you off?

COVEL: Oh, that whole morning, shit was just –

DETECTIVE: Yeah. It was early.

COVEL: -- that morning -- that morning -- that morning was crazy bad.

DETECTIVE: Right?

COVEL: That was –

DETECTIVE: Were you high?

COVEL: -- crazy. Saying a lot of things I shouldn't have said.

DETECTIVE: Okay.

COVEL: Places I shouldn't have been at. I didn't say nothing about me doing it.

DETECTIVE: Oh.

---

safeguards.  Subsequently, appellant abandoned this motion and did not litigate this motion at any time before the trial court.

3

COVEL: I didn't say nothing about me doing it.

DETECTIVE: You just said that morning was a little crazy.

COVEL: That morning was a -- that morning was a wicked morning.

DETECTIVE: Right. Right.

COVEL: Lot -- lot of -- lot of -- lot of wrong places, wrong times. Like, I don't –

DETECTIVE: Okay.

COVEL: You feel me?

During the trial, the State called Todd Nock to authenticate the CCTV video footage. He testified that he viewed some of the shooting live and some of it as a replay. Appellant objected to the State's late disclosure of its intent to call Mr. Nock as a witness. As a remedy for the late disclosure, the court limited Mr. Nock's testimony to authentication of the video.

The State called Mr. Daniel Lamont, a Baltimore Police Department Forensic Scientist, to testify about the fired cartridge cases found at the scene. He was received by the court as an expert in the field of the identification and operability of firearms. Mr. Lamont testified whether all the bullets recovered were discharged from the same gun. Appellant's counsel objected, stating that this testimony was beyond the scope of his expertise, that the expert was testifying regarding tool marking and not merely the identification and operability of firearms. The court overruled the objection and permitted Mr. Nock to testify that all five cartridges were fired from the same firearm and that they bore characteristics that are most common to Glock firearms.

4

At the close of the evidence, the trial court discussed jury instructions with counsel. At the request of the State, the court agreed to instruct the jury regarding the voluntariness of any statements made by appellant. The court instructed the jury as follows:

> "You have heard evidence that the Defendant made a statement to the police about the crime charged. The State must prove beyond a reasonable doubt that the statement was voluntarily made. A voluntary statement is one that under all circumstances was freely given. In deciding whether the statement was voluntary, consider all of the circumstances surrounding the statement, including:
>
> 1. The conversations, if any, between the police and the Defendant;
> 2. Whether the Defendant was advised of his rights;
> 3. The length of time that the Defendant was questioned;
> 4. Who was present;
> 5. The mental and physical condition of the Defendant;
> 6. Whether the Defendant was subject to force or threat of force by the police;
> 7. The age, background, experience, education, character, and intelligence of the defendant;
> 8. Any other circumstances surrounding the taking of the statement.
>
> If you find beyond a reasonable doubt that the statement was voluntary, give it such weight as you believe it deserves. If you do not find beyond a reasonable doubt that the statement was voluntary, you must disregard it."

Appellant requested that the court include in the jury instructions the portion in Maryland Criminal Pattern Jury Instruction § 3:18[2] related to Maryland common law voluntariness

---

[2] The omitted paragraph of MPJI 3:18 reads as follows:

> "[[To be voluntary, a statement must not have been compelled or obtained as a result of any force, promise, threat, inducement or offer of reward. If you decide that the police used [force] [a threat] [promise or inducement] [offer of reward] in obtaining defendant's statement, then you must find that the statement was involuntary and disregard it, unless the State has proven beyond a reasonable doubt the [force] [threat] [promise or inducement] [offer of reward] did not, in any way, cause the defendant to make the statement for

and whether any statement was compelled or obtained as a result of any force, promise, threat, inducement or offer of reward. The court declined to include the second paragraph of MPJI-Cr 3:18, ruling as follows:

> "[T]here is just no evidence of any force, promise, threat, inducement, or offer of reward. And I think that would just be confusing to the jurors. So I'm not going to give the second paragraph."

Appellant was convicted on all charges and this timely appeal followed.

## II.

Before this Court, appellant argues first that the circuit court lacked a sufficient foundational basis to admit the CCTV surveillance video under the silent witness theory.[3] Appellant argues that although surveillance tapes are admitted ordinarily under the silent witness theory, they must be accompanied by a witness who can speak to the authenticity and reliability of the video system. The State presented Todd Nock, an employee of Citiwatch, to authenticate the video. Appellant objects for several reasons. First, appellant asserts that Mr. Nock could not explain the technical aspects of the system's recording and storage capabilities. Second, he states that Mr. Nock saw only a replay of the shooting and

---

one of these reasons, you then must decide whether it was voluntary under the circumstances.]]"

The Notes on Use following MPJI-CR § 3:18 state that the "instructions in the second paragraph should only be given if there is an issue, generated by evidence, about whether force, or a promise, threat, or offer of reward compelled or produced a statement."

[3] The "silent witness" theory refers to the admission of video or photographic evidence which speaks with its own probative effect. *Washington v. State*, 406 Md. 642, 652 (2008). It does not provide illustrative support to witness testimony; rather, a witness testifies to the reliability of the system used to produce the evidence.

did not see the event live. Lastly, he challenges Mr. Nock's statement of reliability as merely conclusory.

Appellant's second argument is that the court erred in omitting the second paragraph of MPJI-CR § 3:18 concerning the voluntariness of a defendant's statement to the police. Appellant argues that the jury could have found evidence that his statement to the detective in North Carolina was coerced for several reasons: he was anxious to get back to Baltimore and settle the issue, he was in custody and hand-cuffed to a wall, and that the detective used leading language to induce a confession. Appellant argues that without paragraph 2, the instruction was incomplete and did not explain to the jury the entirety of the State's burden of proof to find that the statement was voluntary.

Third, appellant argues that the evidence was insufficient to support the convictions of first-degree murder and the use of a handgun in the commission of a crime of violence. Appellant recognizes that convictions may be based solely upon circumstantial evidence but maintains that in this case, the evidence merely arouses suspicion and is "plainly insufficient."

Appellant's final argument is that the trial court erred in allowing Daniel Lamont, the State's firearms examiner, to testify beyond his accepted area of expertise. Mr. Lamont was accepted by the court as an expert in the field of the identification and operability of firearms. Appellant argues that his testimony exceeded his expertise because Mr. Nock was not accepted as an expert in tool marking and that Maryland law constrains an expert testimony to solely what he or she has been qualified for in court. Because the expert

exceeded this constraint, the comparison evidence of the cartridge cases to each other and the weapon should not have been admitted.

The State responds first that the trial court soundly exercised its discretion in admitting the Citiwatch CCTV surveillance video and that Mr. Nock's testimony was sufficient to admit the video. According to the State, the Supreme Court of Maryland[4] has not developed a rigid, foundational requirement for silent witness evidence, but it may include testimony relative to "the type of equipment or camera used, its general reliability, the quality of the recorded product, the process by which it was focused, or the general reliability of the entire system." Mr. Nock testified that the camera network was on and monitoring 24/7, that Citiwatch employees can watch video live and replay footage, and that Citiwatch employees can contact police officers in the field. He testified that he viewed it live and in replay, and that the video accurately captured what he had viewed on May 30, 2019. Lastly, he testified that in his experience the video system was reliable.

As to the instruction related to voluntariness of a confession, the State maintains that the trial court declined correctly to give the voluntariness portion of the instruction because that issue was not generated by the evidence.[5] Additionally, the State asserts that

---

[4] At the November 8, 2022, general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022.

[5] The State points out that although appellant filed a pretrial motion pursuant to Md. Rule 4-252 to suppress his statement, he abandoned those claims and did not litigate a pretrial suppression motion. The State explains that because it was the State that requested the MPJI-Cr 3:18 instruction, "the State does not press an argument that the issue was waived by appellant's abandonment of his pretrial suppression motion." Accordingly, we will not address that issue.

8

appellant's trial counsel did not litigate a pretrial suppression motion regarding his statement to the police. According to the State, *Hof v. State*, 337 Md. 581, 604 (1995), requires that a voluntariness challenge must be litigated before the court in a pretrial suppression motion. However, because it was the State who requested this instruction at trial, it chooses not to advance this line of argument and focuses on the lack of evidence for the instruction. The State argues that the trial court should give the proposed language in the instruction related to voluntariness *only* when there is evidence that a defendant's statement was procured through "force, promise, threat, inducement or offer of reward." The State argues that there was no evidence that appellant's statement was induced or coerced. The State asserts that there are two prongs for a court to consider when deciding to give this instruction: first, whether the police made an inducive statement, and second, whether the appellant relied on the inducement to make his statement. The State construes this second prong as subjective; consequently, appellant's failure to testify precludes a finding that he was motivated by a statement from the interrogating officer.

The State responds to appellant's sufficiency argument in two ways. First, the State asserts that reviewing courts "do not distinguish between circumstantial and direct evidence because a conviction may be sustained on the basis of a single strand of direct evidence or successive links of circumstantial evidence." *Donati v. State*, 215 Md. App. 686, 718 (2014). Second, the State argues that while the evidence was circumstantial, it was not speculative. The State showed the video showing a single shooter. The video showed that the shooter had arrived at the block, the car belonged to appellant's relative, and appellant admitted that he was present at the scene. Furthermore, appellant's

9

statements during his police interview in North Carolina were equivocal, including the omission of a clear denial that he had a gun at the scene. The State argues that this was enough evidence for a jury to decide that he was the shooter beyond a reasonable doubt.

Finally, regarding the qualification of experts, the State responds that the qualification of experts is within the discretion of the trial court and that the court did not abuse its discretion. Moreover, expert's knowledge of firearm operability includes knowledge regarding distinct markings on ballistics evidence. Finally, the State asserts that if there was any error, it was harmless error.

**III.**

We review the trial court's authentication of evidence for an abuse of discretion. *Gerald v. State*, 137 Md. App. 295, 304 (2001). Appellate courts generally defer to the trial court's evidentiary findings and "are loath to reverse a trial court unless the evidence is plainly inadmissible under a specific rule or principle of law or there is a clear showing of an abuse of discretion." *Merzbacher v. State*, 346 Md. 391, 404-05 (1997). Maryland Rule 5-901 governs the authentication or identification of evidence, requiring "evidence sufficient to support a finding that the matter in question is what its proponent claims." The threshold of admissibility is slight. *Jackson v. State*, 460 Md. 107, 116 (2018).

The requirements for the admissibility of photographic evidence and video evidence are essentially the same. *Id*. There are two distinct methods for admission of video evidence in Maryland: the pictorial testimony method, where video evidence is admitted through the testimony of a witness with firsthand personal knowledge, and the silent witness method, when a witness can speak to the reliability and authenticity of the system

10

used to procure the video. *Washington v. State*, 406 Md. 642, 652 (2008). Videos admitted under the silent witness theory must have probative evidence in themselves, meaning they must be edifying regardless of the witness' testimony. *Id.* at 653. There is no strict rubric for admitting evidence under the silent witness theory. *Jackson*, 460 Md. at 116. Foundational testimony can focus on "the type of equipment or camera used, its general reliability, the quality of the recorded product, the process by which it was focused, or the general reliability of the entire system." *Washington*, 406 Md. at 653.

Appellant argues that Mr. Nock could not have provided the proper foundation to admit the surveillance video under the silent witness method because he lacked sufficient knowledge regarding the technical aspects of the video's operation. Mr. Nock's testimony addressed the general reliability of the system. He testified to the scope of the system and the method he used in recording. Additionally, he viewed the events directly after the shooting live. In addition, the recording accurately displayed what he had viewed. The trial court did not abuse its discretion in admitting the video under the silent witness theory.

**IV.**

We turn to appellant's contention that the trial court erred in failing to include paragraph two of the voluntariness jury instruction MPJI-CR § 3:18. To be clear, the trial court instructed the jury that it was required to find that any statements made by appellant were voluntary. That is, the jury was instructed that before a statement or confession may be considered, the jury must find beyond a reasonable doubt that, under the totality of the circumstances, the statement was given freely.

11

Rule 4-325(c) states, in pertinent part, that "[t]he court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding." We review the trial court's decision regarding jury instructions for abuse of discretion. *Cost v. State*, 417 Md. 360, 368 (2010). Although the trial court has discretion, it must give a requested jury instruction where "(1) the instruction is a correct statement of law; (2) the instruction is applicable to the facts of the case; and (3) the content of the instruction was not fairly covered elsewhere in instructions actually given." *Dickey v. State*, 404 Md. 187, 197-98 (2008). There must be some evidence to support the requested instruction. *Blackwell v. State*, 278 Md. 466, 277 (1976). Whether there was sufficient evidence for a judge to give a jury a particular instruction is a question of law for the judge. *Dykes v. State*, 319 Md. 206 (1990).

When reviewing the denial of a jury instruction, the reviewing court must review the instructions in their entirety. We reverse only if the instructions as a whole were insufficient to protect the defendant's rights. *Fleming v. State*, 373 Md. 426, 433 (2003). It is blackletter law that the court need not grant a requested jury instruction if the matter is fairly covered by instructions given by the court. *See* Rule 4-325(c).

To be admissible as evidence against a criminal defendant, statements and confessions must be voluntary. *Knight v. State*, 381 Md. 517, 531 (2004). To be voluntary, a confession must satisfy the federal and state constitutional requirements,[6] and the

---

[6] The protection against compelled self-incrimination found in Article 22 of the Maryland Declaration of Rights has been construed to provide the same protection as the protection found in the 5th Amendment to the U.S. Constitution and made applicable to the states

Maryland common law rule that a confession is involuntary if it is the product of an improper threat, promise, or inducement by the police. *Id*. at 532.

The constitutional test for voluntariness established by the Supreme Court prohibits confessions that are the result of police conduct that overbear the will of an individual and induces that person to confess. *See Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). The Maryland common law test similarly looks to "the totality of the circumstances affecting the interrogation and confession," *Hill v. State*, 418 Md. 62, 75 (2011), but applies a *per se* rule of exclusion for statements that were "'the product of an improper threat, promise, or inducement by the police.'" *Madrid v. Statex*, 474 Md. 273, 317 (2021) (quoting *Lee v. State*, 418 Md. 136, 158 (2011)). The Maryland test for common law voluntariness was set forth in *Hillard v. State*, 286 Md. 145 (1979). Under that test, an inculpatory statement is involuntary if (1) any officer or agent of the police promises or implies to the individual that he or she will be given special consideration from a prosecuting authority or some other form of assistance in exchange for a confession, and (2) the suspect makes a confession in apparent reliance on the police officer's explicit or implicit inducement. *Id*. at 153. Both prongs of the *Hillard* test must be satisfied before a confession is considered involuntary. *Winder v. State*, 362 Md. 275, 310 (2001). "We look first to see if the police made a threat, promise, or inducement. If that prong is satisfied, we look next to see whether there was a nexus between the promise or inducement and the defendant's

---

through the 14th Amendment with two minor exceptions inapplicable here. *Choi v. State*, 316 Md. 529, 535 n.3 (1989).

13

confession." *State v. Tolbert*, 381 Md. 539, 558 (2004). The first prong is an objective test; the second prong is a subjective test. *Id.*

The primary difference between the federal constitutional test and the Maryland common law test is "that constitutional voluntariness does not require that all promises, threats, or inducements render a confession involuntary; instead, the federal constitution requires only that courts consider promises, threats, or inducements as part of the totality of the circumstances that courts must look at to determine voluntariness." *Fulminante*, 499 U.S. at 285-86 (stating that the *Bram* standard of condemning any confession obtained by "any direct or implied promises, however slight, [or] by the exertion of any improper influence," has been replaced by a "totality of the circumstances" test); *see also, Lee v. State*, 418 Md. 136, 159-160 (2011).

In this appeal, appellant relies solely on the omission in the jury instruction relating to State common law voluntariness grounds for asserting that his confessions were not freely and voluntarily given. Specifically, appellant contends that a jury could have found the statements were the product of force or inducements and therefore, he was entitled to the omitted portion of the pattern instruction because the issue was generated by the evidence.

We hold that the trial judge did not abuse his discretion or err in declining to give the requested portion of the pattern jury instruction. Appellant alleges that the circumstances of his arrest and questioning in North Carolina give rise to a finding of coercion. Specifically, appellant asserts he was hand-cuffed to the wall of the interview room, and anxious to take whatever choice would return him to Baltimore. He argues that

the detective's suggestions as to what he should say suggest inducement. However, the transcript of the interview between the detective and appellant gives no indication of inducement or coercion. The detective asks the defendant what happened and presents his own plausible theories. There was no suggestion of any benefit to the appellant, which is at the core of Maryland's common law voluntariness inquiry. Consequently, the trial court did not err in finding that there was insufficient evidence of coercion, inducement, or benefit to instruct the jury on paragraph 2 of the MJPI-CR § 3:18.

The court provided the jury with proper instructions as to how to evaluate the voluntariness of appellant's statements. We conclude that the above statements by the detectives do not constitute express or implied promises, threats or inducements to appellant to make any of the statements he may have made or that he would be given "special consideration from a prosecuting authority or some other form of assistance in exchange for [his] confession." *Madrid v. State*, 474 Md. 273, 317 (2021); *Hillard*, 286 Md. at 153.

## V.

We turn to appellant's argument that the evidence was insufficient to support the conviction of first-degree murder and the use of a handgun in commission of a crime of violence. The standard of review for sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Derr v. State*, 434 Md. 88, 129 (2013). The trier of fact may choose among differing inferences that might possibly be drawn from the evidence. *State v. Smith*, 374 Md. 527, 534 (2003). A

15

reviewing court does not question a jury's determination when there are competing plausible inferences. *Smith v. State*, 415 Md. 174, 183 (2010). It is not the role of the reviewing court to decide the weight of the evidence. *State v. Albrecht*, 336 Md. 475, 478 (1993). Appellate courts look only at whether there was sufficient direct or circumstantial evidence for a factfinder to determine guilt beyond a reasonable doubt. *Id.*

Appellant asserts that the evidence against him is merely circumstantial and cannot give rise to an inference of guilt beyond a reasonable doubt. Circumstantial evidence cannot be based on mere speculation or conjecture to uphold a finding of guilt. *Bible v. State*, 411 Md. 138 (2009).

The evidence in this case is circumstantial. The police were unable to retrieve a gun or to secure a confession. There was no eyewitness who could confirm that appellant was the shooter. However, the evidence is not merely speculative and there is ample evidence that could convince a rational trier of fact of appellant's guilt beyond a reasonable doubt. A car owned by the appellant's uncle was seen driving to the scene. An expired insurance card belonging to appellant's uncle was found in the car. A man exited the vehicle, and that man shot the victim. This was all captured on the Citiwatch camera. The car was left at the scene and police discovered it was owned by appellant's relative. Moreover, and highly significant, appellant admitted to driving to the scene and to getting out of the car. There was sufficient evidence for a jury to find appellant guilty beyond a reasonable doubt.

## VI.

Appellant's final argument is that the trial court erred by allowing the firearms examiner, Daniel Lamont, to testify beyond the scope of his accepted expertise. We review

16

the trial court's admission of expert testimony for abuse of discretion. *Morton v. State*, 200 Md. 529 (2011). The trial court is due significant deference to admit experts, and we will only reverse "if founded on an error of law or some serious mistake, or if the trial court has clearly abused its discretion." *Gutierrez v. State*, 423 Md. 476, 486 (2011) (quoting *Raithel v. State*, 280 Md. 291, 301 (1977)).

Expert testimony is governed by the *Daubert-Rochkind* standard and Maryland Rule 5-702. Rule 5-702 lays out three requirements to admit an expert: (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony. In *Rochkind v. Stevenson*, 471 Md. 1 (2020), the Supreme Court of Maryland held that all Maryland courts were to interpret Rule 5-702 according to the *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) analysis in lieu of the previous prevailing Frye-Reed test. The *Rochkind* court held that *Daubert* required a flexible inquiry into an expert's reliability, focusing on the expert's principles and methodology as opposed to their conclusions. *Rochkind,* 471 Md. at 36. However, "a trial court must also consider the relationship between the methodology applied and conclusion reached." *Id*. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id*. (quoting *General Elec. Co., v. Joiner*, 522 U.S. 136, 146 (1997)). Finally, the Supreme Court of Maryland held that in accord with the Federal approach, the *Daubert* analysis should be applied to the admission of all expert testimony. *Rochkind,* 471 Md. at 36.

17

The *Rochkind* court identified five factors from *Daubert* that should inform a trial court's interpretation of Rule 5-702:

> (1) whether a theory or technique can be (and has been) tested,
> (2) whether a theory or technique has been subjected to peer review and publication,
> (3) whether a particular scientific technique has a known or potential rate of error,
> (4) the existence and maintenance of standards and controls, and
> (5) whether a theory or technique is generally accepted.

*Id*. at 35. The Advisory Committee Notes for Federal Rules of Evidence 702, the Federal counterpart to Rule 5-702, includes five additional factors for determining the reliability of expert testimony.[7] All of the *Daubert* factors are relevant, but none are dispositive; a trial court's application of the factors depends on the specificities of the case. *Id*. at 37.

Appellant asserts that Mr. Lamont was accepted as an expert only in the field of identification and operability of firearms. Appellant argues that for Mr. Lamont to testify that his microscopic comparison of the cartridge casings found at the scene bore similar characteristics of Glock type firearms, he should have been admitted as an expert in tool markings. This distinction is semantic and not significant enough to warrant a disturbance

---

[7] Fed. R. Evid. 702 Advisory Committee Notes contains additional factors courts may use in determining an expert's reliability, summarizing as follows: (6) whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying, (7) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, (8) whether the expert has adequately accounted for obvious alternative explanations, (9) whether the expert is being as careful as he (or she) would be in his (or her) regular professional work outside his (or her) paid litigation consulting, (10) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

18

of the trial court's discretion. Mr. Lamont was qualified to testify regarding the identification and operability of firearms. That would include their discharge, the appearance of the bullet casings, and the ability to opine that the casings were consistent with Glock type firearms. We conclude that Mr. Lamont was duly admitted as an expert and his testimony did not exceed his accepted scope.[8] There was no abuse of discretion.

**JUDGMENTS OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[8] We note that the Supreme Court of Maryland recently held that a firearms examiner could not "offer an unqualified opinion that the crime scene bullets were fired from" a specific gun, but that firearms identification technology "can support reliable conclusions that patterns and markings on bullets are consistent or inconsistent with those on bullets fired from a particular firearm." *Abruquah v. State*, ___ Md. ___, ___, No. 10, Sept. Term, 2022, slip op. at 1-2 (filed June 20, 2023). That case is distinguishable from the present case for two reasons. First, there was no testimony here that bullets were fired from a specific gun. Second, the issue raised on appeal is not the validity or reliability of the identification itself, but only to the expert's qualifications to give that testimony.

19